**NICHOLAS & TOMASEVIC, LLP**
  Craig M. Nicholas (SBN 178444)
  Alex Tomasevic (SBN 245598)
  Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

Attorneys for Plaintiff,
JOSE RIVERA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RIVERA, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>INVITATION HOMES, INC., a Maryland corporation;<br><br>Defendant. | Case No. 4:18-cv-03158-JSW<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CAL. CIV. CODE § 1671**<br><br>**(2) UNLAWFUL AND UNFAIR BUSINESS PRACTICES (BUS. & PROF. CODE §§ 17200-17208)**<br><br>**(3) VIOLATIONS OF THE CONTRACT AND CONSUMER PROTECTION STATUTES OF THE VARIOUS STATES**<br><br>**(4) UNJUST ENRICHMENT**<br><br>**(5) DECLARATORY RELIEF**<br><br>**(6) DECLARATORY JUDGMENT OF INVALIDITY OF THE LATE RENT PENALTIES**<br><br>**DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. Ten years ago, the market crashed and 9 million families lost their homes through foreclosure, short-sale, or surrender to a lender. Since then, national and global private equity firms have snatched up tens of thousands of single-family

homes at hugely discounted prices (sometimes subsidized by the government and taxpayers), which they have then turned into rental properties. In short, the residential rental industry has recently undergone a massive transformation and consolidation out of the hands of small and family landlord businesses (who had direct ties to and relationships with their tenants), and into the large arms of private equity, hedge fund, and other Wall Street giants whose allegiances run solely to their investors, and whose motivations are driven purely by stock price and by showing and growing those all-important quarterly earnings.[1]

2. These changes have hurt consumers. The Wall Street landlords evict tenants at an astonishingly higher rate than other single-family landlords. For instance, in the Atlanta area, where Defendant Invitation Homes also operates, nearly one-third of all Invitation Homes (f.k.a. Starwood Waypoint) tenants received eviction notices in 2015. Rent increases follow the same trend, with Wall Street tenants facing, sometimes, $1,000/month increases.[2] The Wall Street landlords, furthermore, often systematically refuse to do necessary and even routine maintenance on homes because those costs eat into their crucial bottom line. Finally, and as is the focus in this case, the Wall Street landlords resort to illegal fee-gouging, such as deploying grossly inflated "late" rent penalties, and penalties that stack on top of penalties that, themselves, cause a tenant to fall behind (even when they are paying their actual rent). Tenants are forced to pay illegal fees because if they do not, the landlords, like Defendant here, will evict them.

3. Defendant Invitation Homes Inc. (NYSE: INVH) is the largest player in this newly transformed rental market. Publicly-traded Invitation Homes now

---

[1] Abood, M. (2018) *Wall Street Landlords Turn American Dream into American Nightmare*. https://d3n8a8pro7vhmx.cloudfront.net/acceinstitute/pages/100/attachments/original/1516388955/WallstreetLandlordsFinalReport.pdf?1516388955 (last accessed Aug. 17, 2018).

[2] Single family rental homes are often exempted from local rent control ordinances which makes their tenants particularly susceptible to price gouging.

owns, leases, and manages more than 82,000 rental homes across the country. They have a uniform late rent penalty policy and practice across all of their residential rental properties. Their policy and practice is to charge tenants initial fees of $95 for the late payment of rent, even if Defendants receive the rent as little as one hour late (past the grace period) and even though Defendant incurs no actual damage as a result.

4. Moreover, Defendant's policy and practice is to stack penalties where possible, e.g. to charge tenants additional late fees of $95, or more, if tenants carry *any* accrued balance of unpaid late fees or other charges, even when the tenants timely pay the monthly rent itself, and regardless of whether the outstanding balance is minimal. Said another way, one late rent payment can and often does lead to multiple added fees.

5. Defendant's late fees are an illegal penalty under the laws of every state that Defendant operates in. The penalty is illegal, and thus, void, because it is excessive and bears no relation to any actual damages incurred by Defendants when rent or other fees are paid late. *See, e.g.,* Cal. Civ. Code § 1671(d); Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981); U.C.C. ("UCC") § 2-718(1) (followed in every state that Defendant operates in). Defendant's policy and practice of charging excessive penalties uniformly violates the California Civil Code, the California Unfair Competition Law ("UCL"), the Restatement, and the anti-contractual-penalty and consumer protection provisions of every state in which Defendant operates in. Plaintiff, a former Invitation Homes tenant, brings this action to challenge Defendant's excessive penalty policy on behalf of himself and all other similarly situated tenants.

## II. <u>JURISDICTION AND VENUE</u>

6. There is subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). This Court has jurisdiction under CAFA because there are more than one hundred putative class members, the aggregate

claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than one or more Defendants.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue is also proper in this district pursuant to 28 U.S.C. § 1441(a), given that this Court has subject-matter jurisdiction under CAFA. Venue in this district is also proper because each Defendant "resides" in this district under 28 U.S.C. § 1391(b)(1) and (c)(2), in that Defendant is subject to this Court's personal jurisdiction with respect to this civil action.

### III. THE PARTIES

8. Plaintiff Jose Rivera was a tenant of Defendant Invitation Homes in California. He was subject to Defendant's illegal late rent penalty policy and he was forced to pay, and did pay, late rent penalties to Defendant.

9. Invitation Homes was once privately held by New York's Blackstone Group. Blackstone took Invitation Homes public in February 2017. By that time, another large home rental firm—Waypoint Homes—had already merged with another—Colony Starwood—in 2016. Then Invitation merged with Waypoint Homes in November 2017 to create the current defendant: Invitation Homes, Inc. (NYSE: INVH). Defendant Invitation Homes now owns and manages over 82,000 homes across 12 U.S. States: California, Georgia, North Carolina, Illinois, Texas, Colorado, Florida, Nevada, Minnesota, Tennessee, Arizona, and Washington. Defendant is publicly-traded on the NYSE (ticker symbol INVH), and has a current market cap of over $12 Billion. Defendant does business in California, including in this County. Defendant owns and leases over 12,600 homes in California alone. Many of those homes are in this county and this judicial district.

10. Defendant owns, controls, leases, and manages residential properties throughout California and the eleven other states referenced above. Defendant's

policy and practice, throughout the nation, is to assess residential tenants, first, a fee of $95 for the late payment of rent regardless of the amount of rent owed or the length of time which elapses from the time rent is due and the time that the tenant pays that rent. Defendant's systematic practice is to also threaten eviction—i.e., serve a notice to "pay rent or quit," as soon as the rent is late, and along with or very soon after charging the $95 late fee. When it does so, Defendant then tacks on a "legal" fee which can be $75 or more. If tenants do not pay these automatic fees, they will be evicted promptly.

11. These late fees are exorbitant when you do the math. For example a typical rent could be $2,699 per month. If the tenant paid his or her rent just two days late, Defendant would charge the tenant a minimum $95 penalty. That amounts to a 642% annual interest rate on that $2,699 original balance.

12. Plaintiff Jose Rivera was Defendant's tenant in a single-family home in Sylmar, California, until February of 2018. Plaintiff had signed and had been subject to Defendant's uniform lease that Defendant consistently used and continues to use for all of its homes nationwide. Plaintiff's lease, along with all of Defendant's leases, contained a late rent penalty provision charging $95 as soon as the rent is even a minute late. Plaintiff was forced to pay Defendant, and did pay, late rent penalties pursuant to this provision. Defendant forced thousands of its other tenants to do the same.

13. Mr. Rivera would typically pay his rent through Defendant's online web portal. However, from time-to-time, Defendant's web portal would break. For example, once, in February of 2017, Mr. Rivera tried to pay his rent online but the portal was not working. He called Defendant and Defendant told him to not "worry about it" and to just "keep trying." Mr. Rivera tried multiple times to pay online, but the online portal would not work. Eventually Mr. Rivera just mailed in his rent payment. It was technically "late" according to Defendant's lease, although through no fault of Mr. Rivera.

5                                          4:18-cv-03158-JSW
FIRST AMENDED CLASS ACTION COMPLAINT

14. To his surprise, Defendant returned Mr. Rivera's rent check back to him in the mail. Defendant had refused to accept the check because Mr. Rivera had not also included additional fees and penalties for the rent being "late." In other words, it was and is Defendant's policy not to accept "partial" rent payments, and Defendant considered, as a matter of policy, rent payments that did not include additional and unilaterally-imposed penalties to be improper "partial" payments.

15. Defendant threatened to evict Mr. Rivera for paying his rent, but not all of the added fees. Defendant claimed that it had already initiated eviction proceedings against Mr. Rivera.

16. Mr. Rivera, like many of Defendant's tenants, had lived in his rental home for years with his family. Worried about losing his home, Mr. Rivera capitulated and paid the fees that Defendant unilaterally imposed. He paid a $95 late fee plus $895 in supposed "legal" fees to avoid eviction. This was not the only time Mr. Rivera was forced to pay the arbitrary $95 "late fee" and other penalties.

17. Mr. Rivera's story is, unfortunately, common. Defendant knows it has virtually unchecked power to collect whatever late fee it wants, *when* it wants, no matter how illegal it may be. This is because the system that Defendant deployed is protected by the threat of eviction. *I.e.*, Defendant knows that the tenant faces the following dilemma: pay the late fees and stacked penalties, or challenge them but swiftly see a "3-Day Notice to Pay Rent or Quit" posted on your front door and risk eviction for yourself and your family. When faced with that choice, tenants begrudgingly pay the penalty, and Defendant knows this.

18. Defendant's late penalty—both the $95 "fee" by itself, and also when combined with stacked fees and/or added "legal" fees—is an arbitrary amount which functions as an illegal penalty. All 12 of the states in which Defendant owns homes and does business outlaw such penalties. In all of the relevant states, while landlords may institute appropriate "liquidated damages" provisions under certain circumstances, they may only do so if: (a) it would be extremely difficult or

infeasible to calculate actual damages from the late payment; *and* (b) they undertake a sufficient endeavor to set a reasonable amount in light of the actual harm. *Cf.* Cal. Civ. Code § 1671(d); Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981); U.C.C. § 2-718(1).

19. Defendant's late penalty utterly fails on both points. First, it is not difficult or infeasible to calculate damages from late rent. In the vast majority of cases, rent is only a few days (perhaps only hours) late, causing no actual damage to Defendant. Loss of use of having rent money sitting in a bank account by a certain hour or day, furthermore, can be compensated by a marginal interest payment that is definite and easily ascertainable, as courts have long held. Moreover, in more advanced cases when Defendant seeks to collect late rent payments by actually filing an unlawful detainer action, they charge attorney's fees and costs separately to those tenants, demonstrating that Defendant views those legal costs as separate from the damages that allegedly flow automatically from rent being paid late (even assuming that such costs could lawfully be recouped via late fees). Second, on information and belief, Defendant has never made a reasonable endeavor to estimate a fair average or actual compensation for the losses sustained when a tenant pays rent late, as required when setting a lawful "liquidated damage."

20. Particularly nefarious and punitive is Defendant's uniform nationwide practice of stacking or "pyramiding" penalties upon penalties. Defendant imposes the $95 penalty. Defendant then systematically imposes a "legal" fee. Then, separately and month after month, Defendant stacks another $95 fee on top even when a tenant is carrying a minimal balance, and even if the tenant has paid the base rent for that month (but, perhaps, not paid the full amount of all of the additional penalties that Defendant unilaterally imposed). This policy—which essentially establishes multiple late charges based on a single original late payment—is set forth in Defendant's standard nationwide lease, which Plaintiff and others had to execute on a take-it-or-leave it basis.

21. More specifically, Defendant and its uniform required lease define the late rent penalty itself as "rent," and Defendant records these fees as a debt on tenants' rent ledger or account. On information and belief, upon receiving tenants' subsequent monthly rent payments, Defendant applies that payment to the previously recorded debt first (including the assessed penalties), rather than the rent due for the month in which payment is actually made. Defendant then considers that month's "rent" as not paid in full and then assesses *another* late rent penalty despite tenants' full and timely monthly rent payment. As a result, Defendant charges a late fee of at least $95 on a balance that may be only $95 to begin with, or even smaller. As a result, tenants incur repeated late penalties. This happened to Plaintiff and many members of the Class.

22. On information and belief, some people have been evicted and put out on the street purely as a result of this late rent penalty and, in particular, this penalty stacking practice. For example, Invitation Homes posted a three-day pay-or quit notice on their tenant's—an elderly woman's—door in Los Angeles, and slapped a $95 penalty on her account because she had a remaining balance of just $40 at the time, after making her initial rent payment.

23. The practice of charging late fees on outstanding late fees and other balance amounts other than the monthly rent itself is an also an unfair and illegal business practice no different than the "pyramiding" of late fees by banks that was found to be unlawful.

24. During a recent earnings call with banks and investors, furthermore, Invitation Homes spoke proudly of such efforts, boasting of a 22% increase in earnings due to its "system" which is designed to "track resident delinquency on a daily basis" in order to continually, and automatically, assess late fees and process evictions without regard to individual circumstances. These impressive earnings, in short, are ultimately the result of Defendant systematically imposing and collecting what is, as a matter of law, an illegal penalty.

8    4:18-cv-03158-JSW
FIRST AMENDED CLASS ACTION COMPLAINT

# IV. CLASS ALLEGATIONS

25. Plaintiff brings this action on behalf of himself and all other similarly situated persons as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

26. **CLASS PERIOD.** The Class Period shall be defined from the date of the filing of this complaint, back to any such time the court deems appropriate.

27. **CLASS DEFINITION.** There are two classes or sub-classes, defined as follows:

    **a. CALIFORNIA CLASS**

    *All of Defendant's California tenants who were charged penalties or fees for paying rent Defendant deemed as late or deficient.*

    **b. MULTI-STATE CLASS**

    *All of Defendant's tenants, in all states, who were charged penalties or fees for paying rent Defendant deemed as late or deficient.*

28. The Classes do not include (1) Defendant, its officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

29. Plaintiff reserves the right to amend the above class definitions and to add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

30. **NUMEROSITY:** The potential members of each these Classes as defined are so numerous that joinder of all the members is impracticable. While the precise number of class members has not been determined, it is currently believed to number into the thousands. Plaintiff is informed and believes that Defendant has access to data sufficient to identify all class members and all relevant charges.

31. Plaintiff is informed, believes, and on that basis alleges that Defendant's records would provide information as to the number and location of all class members.

32. **ADEQUACY OF REPRESENTATION:** The named Plaintiff is fully prepared to take all necessary steps to fairly and adequately represent the interests of the classes defined above. Plaintiff's attorneys are ready, willing, and able to fully and adequately represent the class and individual Plaintiff. Plaintiff's attorneys are highly experienced in consumer class action litigation. Plaintiff intends to prosecute this action vigorously.

33. **COMMON QUESTIONS OF LAW AND FACT:** Common questions of law and fact concerning these claims predominate over any individual questions. Those common questions include:

   a. What Defendant's leases say;
   b. What Defendant's late fee penalties are;
   c. Whether any damages actually felt by Defendant as a result of late rent are truly impracticable or extremely difficult to calculate;
   d. How Defendant set its standard late fee amount ($95) and whether it actually tried to calculate whether it would represent fair compensation for the loss sustained;
   e. Whether Defendant's conduct violates public policy;
   f. Whether Defendant has violated the laws asserted here;
   g. Whether Plaintiff and the Classes may recover monetary damages;
   h. Whether Plaintiff and the Classes may obtain an order of restitution; and
   i. Whether Plaintiff and the Classes may obtain injunctive relief.

34. **TYPICALITY:** The claims of the Plaintiff are typical of the claims of all members of the Classes because Defendant charged everyone the same penalty for the same reasons (or lack thereof).

35. **SUPERIORITY OF A CLASS ACTION:** A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is not practicable, and questions of law and fact common to the Classes predominate over questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery due to Defendant's conduct described in this Complaint. A class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judiciary. Plaintiff is unaware of any difficulties likely to be encountered in this action that would preclude its maintenance as a class action.

## IV. FIRST CAUSE OF ACTION

**(Imposition of an Illegal Penalty – Cal. Civ. Code § 1671)**
**(By Plaintiff on behalf of himself and the California Class, Against Defendant)**

36. Plaintiff incorporates by reference each and every allegation contained above.

37. Defendant rented real property to Plaintiff and Class Members for use as dwellings by Plaintiff, Class Members, or those dependent upon Plaintiff or Class Members for support, pursuant to California Civil Code section 1671(c)(2).

38. California Civil Code section 1671(d) provides that "a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

39. During the Class Period, on information and belief, any actual damages Defendant sustained as a result of Plaintiff's and Class Members' late payment of rent or other outstanding balance amounts are neither impracticable nor extremely difficult to fix. Nor is Defendant's late rent fee the result of a reasonable effort to estimate fair compensation for Defendant's actual damages sustained, if any, due to

their late receipt of rent or other outstanding balance amounts from Plaintiff or Class Members.

40. Defendant's late rent penalties are accordingly unlawful pursuant to California Civil Code section 1671(d). Plaintiff and Class Members are entitled to restitution of all fees Defendant has collected from tenants for the late payment of rent or other outstanding balances, as well as interest and other relief as specifically prayed for here.

## V. SECOND CAUSE OF ACTION

**(Violation of California's Unfair Competition Law –
Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**
**(By Plaintiff on behalf of himself and the California Class, Against Defendant)**

41. Plaintiff incorporates by reference each and every allegation contained above.

42. California Business and Professions Code section 17200, *et seq.*, prohibits businesses from engaging in any unlawful, unfair, or fraudulent business acts or practices. Defendant's policy and practice of imposing and collecting excessive late rent penalties from Plaintiff and Class Members constitutes unlawful acts and practices prohibited by California Civil Code section 1671 and, as such, are also prohibited by the UCL (Cal. Bus. & Prof. Code §§ 17200-17208).

43. Separately, Defendant's policy and practice with respect to imposing excessive late fees is also "unfair" because it has a great and deleterious effect on its victims (including Plaintiff, the California Class, and competitors) and it has no legal justification. Defendant's motives in imposing these fees are driven purely by anticipated profits and without regard to their legality. The fees are also penal in nature and violate the public policy embodied in California Civil Code section 1671. And insofar as Defendant is stacking or pyramiding late fees, that practice itself violates the same public policies embodied in section 1671, as well as those policies embodied in the FTC Act, Section 5 (*i.e.*, 15 U.S.C. 45—which prohibits unfair

methods of competition).[3] Additionally, Defendant's business practices offend established public policies regarding the protection of consumers and tenants and the practices are also immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. Indeed these practices cause tenants to have to pay substantial sums that are completely divorced from whatever minimal inconvenience or damage, if any, might be felt by the landlord as a result of some late rent, or partial payment of rent. Not only do these practices result in the taking of unfair sums of money from consumers, but also to ruined credit and unlawful evictions. These harms to the consumer greatly outweigh the utility, if any, of the practice.

44. Plaintiff and Class Members have suffered injury in fact and lost money or property pursuant to California Business and Professions Code section 17204 as a result of Defendant's unlawful and/or unfair business acts or practices.

45. As a result of these unlawful business acts and practices, Defendant has reaped unfair benefits and illegal profits, at the expense of Plaintiff and all similarly-situated tenants and former tenants. Plaintiff and Class Members are therefore entitled to an order of restitution requiring Defendant to restore to Plaintiff and Class Members the money which Defendant has acquired by means of its unlawful and unfair business acts and practices, including excessive late rent penalties, with accrued interest. All such remedies are cumulative of relief available under other laws, pursuant to California Business and Professions Code section 17205.

46. Plaintiff also seeks an injunction. Pursuant to the UCL, Plaintiff, the class, and the general public are entitled to injunctive relief against Defendant's ongoing continuation of such unlawful business practices.

47. If Defendant is not enjoined from engaging in the unlawful business practices described above, Plaintiff and the general public will be irreparably

---
[3] Pyramiding, in the context of lending, is listed expressly as an example of an unfair act or practice within the meaning of the FTC Act. *See* 12 C.F.R. 535.4.

injured. The exact extent, nature, and amount of such injury is difficult to ascertain at this time.

48. Plaintiff has no plain, speedy, and adequate remedy at law.

49. Defendant, if not enjoined by this Court, will continue to engage in the unlawful business practices described above in violation of the UCL, in derogation of the rights of Plaintiff, the class, and of the general public.

50. Finally, the success of Plaintiff in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public. Private enforcement of these rights is necessary as no public agency has pursued enforcement. There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action. Plaintiffs are therefore entitled to an award of attorney's fees and costs of suit pursuant to California Code of Civil Procedure Section 1021.5.

## VI. THIRD CAUSE OF ACTION

**(Violation of the Various States' Consumer Protection Laws or Laws Outlawing Illegal Contractual Penalties)**
**(By Plaintiff on behalf of himself and the Multi-State Class, Against Defendant)**

51. Plaintiff incorporates each and every allegation contained above.

52. Defendant owns and operates rental homes not only in California, but also in Georgia, North Carolina, Illinois, Texas, Colorado, Florida, Nevada, Minnesota, Tennessee, Arizona, and Washington. Defendant uses the same lease and charges the same late fee penalty in every state.

53. Defendant's policies and practices described above with respect to the late rent penalties are all illegal under the laws of each of the above-referenced states, and they are all illegal for the same reasons.

54. More specifically, while every state mentioned above allows for the assessment of appropriate "liquidated damages" under certain circumstances, every

14  4:18-cv-03158-JSW
FIRST AMENDED CLASS ACTION COMPLAINT


state outlaws illegal or excessive penalties in contracts, including in residential leases. Moreover, each of the above-referenced states agree that a fee will be deemed an illegal penalty whenever the fee does not, at a minimum, bear any reasonable relation to any *actual* damages incurred by Defendant when rent or other fees are paid late.

55. Defendant's illegal late fees are illegal universally, *i.e.*, in every state where they are assessed, because they do not meet the shared minimum requirement of bearing any reasonable relation to the actual damages incurred by Defendant, if any. Additional facts proving that these penalties do not meet this universal "reasonable relation" requirement include, but are not limited to:

    a. Defendant did not attempt to make a reasonable inquiry or calculation of what its actual damages might be from the late payment of rent, or when setting the universal late rent penalties.

    b. Defendant charges the same late penalties (starting with the initial $95 fee) regardless of the amount of rent charged;

    c. Defendant charges the same $95 initial fee regardless of whether the rent was paid one minute late or one month late;

    d. Defendant charges the same $95 initial fee regardless of whether it had to take no action whatsoever on that tenant's account before the tenant paid the rent, or whether it had to take some action, like sending reminders, posting notices, etc.

56. As such, the late rent penalties are excessive, unreasonable, and, thus, illegal in all states in which they are assessed. Defendant has, thus, engaged in unfair competition or unfair or illegal acts or practices in violation of, at a minimum:

    a. <u>As to Arizona</u>: Ariz. Rev. Stat. § 47-2718 and Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981), which is followed in Arizona. *See also Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 393 P.3d 449 (2017);

|   |    |   |
|---|----|---|
| 1 | b. | As to California:   Cal. Bus. & Prof. Code § 17200, *et seq.*; Cal. Civ. Code § 1671; and Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981); |
| 4 | c. | As to Colorado:   Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981), which is followed in Colorado. *See also Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1034 (Colo. 2006); *Bd. of Cty. Comm'rs of Adams Cty. v. City & Cty. of Denver*, 40 P.3d 25, 29 (Colo. App. 2001); |
| 9 | d. | As to Florida: Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981), which is followed in Florida; Fla. Stat. § 501.201, *et seq.; see also Hyman v. Cohen,* 73 So.2d 393 (Fla. 1954); *Hutchison v. Tompkins,* 259 So. 2d 129, 132 (Fla. 1972); |
| 13 | e. | As to Georgia:  Ga. Code Ann. § 10-1-392, *et seq.* (2015); Ga. Code Ann. § 11-2-718; Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981), which is followed in Georgia; *see also AFLAC, Inc. v. Williams*, 444 S.E.2d 314, 317 (Ga. 1994); |
| 17 | f. | As to Illinois:  815 Ill. Comp. Stat. 505/1, *et seq.;* Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981), which is followed in Illinois; *see also Jameson Realty Grp. v. Kostiner,* 813 N.E.2d 1124, 1130 (Ill. App. Ct. 2004); |
| 21 | g. | As to Minnesota:   Minn. Stat. § 8.31, *et seq* Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981), which is followed in Minnesota; *see also Schutt Realty Co. v. Mullowney,* 10 N.W.2d 273 (Minn. 1943); |
| 25 | h. | As to Nevada:  Nev. Rev. Stat. § 598.0903 (2017), *et seq.;* Nev. Rev. Stat. § 104.2718 (1965); Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981), which is followed in Nevada; *see* |

| | | |
|---|---|---|
| 1 | | *also Silver Dollar Club v. Cosgriff Neon,* 389 P.2d 923 (Nev. |
| 2 | | 1964); |
| 3 | i. | <u>As to North Carolina</u>: N.C. Gen. Stat. § 75-1.1 (1977), *et seq.;* |
| 4 | | Restatement (Second) of Contracts § 356(1) (Am. Law Inst. |
| 5 | | 1981), which is followed in North Carolina; *see also Knutton v.* |
| 6 | | *Cofield,* 160 S.E.2d 29 (N.C. 1968); |
| 7 | j. | <u>As to Tennessee</u>: Tenn. Code Ann. § 47-18-101 (1977), *et seq.;* |
| 8 | | Restatement (Second) of Contracts § 356(1) (Am. Law Inst. |
| 9 | | 1981), which is followed in Tennessee; *see also V.L. Nicholson* |
| 10 | | *Co. v. Transcon Inv. And Financial Ltd., Inc.,* 595 S.W.2d 474 |
| 11 | | (Tenn. 1980); |
| 12 | k. | <u>As to Texas</u>: Tex. Bus. & Com. Code Ann. § 17.41, *et seq.;* |
| 13 | | Restatement (Second) of Contracts § 356(1) (Am. Law Inst. |
| 14 | | 1981), which is followed in Texas; *see also Phillips v. Phillips,* |
| 15 | | 820 S.W.2d 785, 788 (Tex. 1991); |
| 16 | l. | <u>As to Washington</u>: Wash. Rev. Code § 19.86.010 (1961), *et* |
| 17 | | *seq.;* Restatement (Second) of Contracts § 356(1) (Am. Law Inst. |
| 18 | | 1981), which is followed in Washington; *see also Walter* |
| 19 | | *Implement, Inc. v. Focht,* 730 P.2d 1340 (Wash. 1987). |

57. As a result of these unlawful practices, Defendant has reaped unfair benefits and illegal profits, at the expense of Plaintiff and all similarly-situated tenants and former tenants. Plaintiff and Class Members are therefore entitled, under the laws of each above-referenced states, to an order requiring Defendant to pay back the money which Defendant has acquired by means of its unlawful practices, including excessive late rent penalties, with accrued interest.

[*rest of page intentionally left blank*]

## VII. FOURTH CAUSE OF ACTION

**(Unjust Enrichment/Quasi-Contract)**
**(By Plaintiff on behalf of himself and the Multi-State Class, Against Defendant)**

58. Plaintiff incorporates each and every allegation contained above.

59. Plaintiff brings this claim individually and on behalf of the members of the all classes.

60. Plaintiff and his fellow class members conferred benefits on Defendant by paying late rent penalties that were improperly charged.

61. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and his fellow tenants. Retention of those monies under these circumstances is unjust and inequitable because it was illegal and improper to charge those moneys. Defendant's retention of those monies has caused injuries to Plaintiff and members of the class because they should not have had to pay those fees and they would not have paid those fees if they had known it was illegal to charge them.

62. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and his fellow class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the class for Defendant's unjust enrichment, as ordered by the Court.

## VIII. FIFTH CAUSE OF ACTION

**(Declaratory Relief Under State Law)**

**(By Plaintiff on behalf of himself and the Multi State Class, Against Defendant)**

63. Plaintiff incorporates each and every allegation contained above.

64. An actual controversy has arisen and now exists, between Plaintiff and the classes of tenants he represents, and Defendant concerning their respective rights and duties. Plaintiff contends that the late rent penalties imposed by Defendant, starting with initial $95 fee and all "legal" fees, are illegal and

improper penalties and *not* appropriate "liquidated damages." Defendant contends that the late rent penalties are permissible "liquidated damages."

65. Plaintiff, on his behalf and on behalf of the Classes he represents, desires a judicial determination of his rights and duties and the Class members' rights and duties, and a declaration to the effect that Defendant's late fee penalties are illegal penalties that must be voided.

66. A judicial declaration would advise tenants of their rights, and would advise Defendant of its duties to Plaintiff and to Class members. A judicial declaration is also necessary to determine the validity of Defendant keeping any of the late rent penalties it has already collected, as well as Defendant's anticipated attempts to keep collecting such penalties.

## X.   SIXTH CAUSE OF ACTION

**(Declaratory Judgment of Invalidity of the Late Rent Penalties)**
**(By Plaintiff on behalf of himself and the Multi State Class, Against Defendant)**

67. Plaintiff incorporates each and every allegation contained above.

68. Defendant contends that its late fee practices and provisions in its leases constitute appropriate or legal "liquidated damages." Plaintiff contends that the late fee practices and provisions are penalties.

69. An actual, present, and justiciable controversy has arisen and now exists, between Plaintiff and the classes of tenants he represents, and Defendant concerning their respective rights and duties.

70. Plaintiff, on his behalf and on behalf of the Classes he represents, desires a declaratory judgment from this Honorable Court that Defendant's late fee penalties are illegal penalties that must be voided and returned.

## IX.   REQUEST FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

# X. PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendant, as follows:

1. That the Court determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23, and define the Classes as requested above;
2. That the Court find and declare that Defendant's late fees and policy and practice of assessing such late fees against Plaintiff and Class Members are unlawful;
3. For compensatory damages according to proof;
4. For disgorgement of all monies which Defendant has illegally gained;
5. For restitution according to proof at trial;
6. For an order enjoining Defendant from any further illegal acts and practices with respect to the late rent penalty;
7. For pre-judgment interest;
8. For costs of suit;
9. For reasonable attorneys' fees; and
10. For such other and further relief as this Court may deem just and proper.

Respectfully submitted:

DATED: August 17, 2018

**NICHOLAS & TOMASEVIC, LLP**

By:  */s/ Alex Tomasevic*
Craig M. Nicholas
Alex Tomasevic
Shaun Markley
225 Broadway, Floor 19
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

Attorneys for Plaintiff