Aaron T. Winn (SBN 229763)
**DUANE MORRIS LLP**
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: +1 619 744 2200
Fax: +1 619 744 2201
E-mail:      atwinn@duanemorris.com

Justin J. Fields (SBN 259491)
**DUANE MORRIS LLP**
Suite 2200
One Market, Spear Tower
San Francisco, CA 94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001
E-mail:      jfields@duanemorris.com

Attorneys for Defendant
INVITATION HOMES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| JOSE RIVERA, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INVITATION HOMES, INC. a Maryland corporation,<br><br>Defendant. | Case No.: 4:18-cv-03158-JSW<br><br>**DEFENDANT INVITATION HOMES, INC.'S REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO MOTION FOR ORDER RE: LEAVE TO FILE AMICUS CURIAE BRIEF [ECF NO. 49]**<br><br>Date:          November 20, 2020<br>Time:          9:00 a.m.<br>Courtroom:  5<br><br>Judge:          Jeffrey S. White<br>Complaint Filed: May 25, 2018 |

1    Pursuant to Federal Rule of Evidence 201, Defendant Invitation Homes, Inc. asks that the

2    Court take judicial notice of the following filings:

3    **Exhibit A**:    ECF No. 1, the Complaint in *Tidwell v. CSHP One LP, et al.*, Case No. 3:20-

4                   cv-01368-VC, N.D.Cal. filed Feb. 24, 2020 (the "Tidwell Action").

5    **Exhibit B**:    ECF No. 59, Order Dismissing Case in the Tidwell Action, filed July 17,

6                   2020.

7    **Exhibit C**:    ECF No. 16, Order in the appeal of the Tidwell Action, No. 20-16413, filed

8                   September 18, 2020.

9    These filings are judicially noticeable. See e.g. *Reyn's Pasta Bella, LLC v. Visa*

10   *USA, Inc.,* 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking judicial notice, as a matter of

11   public record, "pleadings, memoranda, expert reports, etc., from [earlier] litigation[,]"

12   which were thus "readily verifiable").

13

14   Dated:  October 27, 2020                    DUANE MORRIS LLP

15

16                                              By:/s/Aaron T. Winn
17                                                 Aaron T. Winn
                                                   Justin J. Fields
                                                   Attorneys for Defendant
18                                                 INVITATION HOMES, INC.

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

- 1 -

Your Name: EDWARD C. TIDWELL

Address: 81 Carol Lane, Apt # 208
Oakley, California 94561, Contra Costa County

Phone Number: (510) 470-8422

Fax Number: None

E-mail Address: edwardctidwell@yahoo.com

Pro Se Plaintiff

**FILED**

FEB 24 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

⑤ IFP
NP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

DMR

| | |
|---|---|
| EDWARD C. TIDWELL, | Case Number **C20-1368** |
| Plaintiff, | **COMPLAINT** AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF |
| vs. | (28 U.S.C. § 2201; FRCP, Rule 57; and FRCP, Rule 65) |
| CSHP ONE LP, a Delaware Limited Partnership; CSH PROPERTY ONE, LLC, a Delaware Limited Liability Company; et al. and DOES 1 to 10, Inclusive. | DEMAND FOR JURY TRIAL |
| (See Attached List for Additional Defendants) Defendant. | Yes ✓ No ☐ |

**PARTIES**

1. Plaintiff. [*Write your name, address, and phone number. Add a page for additional plaintiffs.*]

Name: Edward C. Tidwell

Address: 81 Carol Lane, Apt # 208
Oakley, California 94561, Contra Costa County

Telephone: (510) 470-8422

COMPLAINT
PAGE 1 OF 30 [*JDC TEMPLATE – Rev. 05/2017*]

2. Defendants. [*Write each defendant's full name, address, and phone number.*]

Defendant 1:

Name:     CSHP ONE LP

Address:     8665 E. Hartford Drive, Suite 200, Scottsdale, Arizona 85255

Telephone:     (972) 421-3600 or (855) 224-5484


Defendant 2:

Name:     CSH PROPERTY ONE, LLC

Address:     1717 Main Street, Suite 2000, Dallas, Texas 75201

Telephone:     (972) 421-3600 or (855) 224-5484


Defendant 3:

Name:     INVITATION HOMES INC.

Address:     1717 Main Street, Suite 2000, Dallas, Texas 75201

Telephone:     (972) 421-3600 or (855) 224-5484

(See Attached List of Additional Defendants)

## JURISDICTION

[*Usually only two types of cases can be filed in federal court, cases involving "federal questions" and cases involving "diversity of citizenship." Check at least one box.*]

3. My case belongs in federal court

☑ under federal question jurisdiction because it is involves a federal law or right.

[*Which federal law or right is involved?*]This lawsuit is pursuant to 28 U.S.C. §§ 1331, 1343;

28 U.S.C. § 1367; 28 U.S.C. §§ 2201, 2202; and 42 U.S.C. § 1983                                 .

☐ under diversity jurisdiction because none of the plaintiffs live in the same state as any of the

defendants and the amount of damages is more than $75,000.

COMPLAINT
PAGE 2 OF 30 [*JDC TEMPLATE – Rev. 05/2017*]

## VENUE

[*The counties in this District are: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo, or Sonoma. If one of the venue options below applies to your case, this District Court is the correct place to file your lawsuit. Check the box for each venue option that applies.*]

4.    Venue is appropriate in this Court because:

☑ a substantial part of the events I am suing about happened in this district.

☑ a substantial part of the property I am suing about is located in this district.

☐ I am suing the U.S. government, federal agency, or federal official in his or her official capacity <u>and</u> I live in this district.

☑ at least one defendant is located in this District and any other defendants are located in California.

## INTRADISTRICT ASSIGNMENT

[*This District has three divisions: (1) San Francisco/Oakland (2) San Jose; and (3) Eureka. First write in the county in which the events you are suing about happened, and then match it to the correct division. The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Sonoma counties. The San Jose division covers Monterey, San Benito, Santa Clara, Santa Cruz counties. The Eureka division covers Del Norte, Humboldt, Lake, Mendocino counties, only if all parties consent to a magistrate judge.*]

5.    Because this lawsuit arose in <u>Contra Costa</u> County, it should be assigned to the <u>Oakland</u> Division of this Court.

## STATEMENT OF FACTS

[*Write a short and simple description of the facts of your case. Include basic details such as <u>where</u> the events happened, <u>when</u> things happened and <u>who</u> was involved. Put each fact into a separate, numbered paragraph, starting with paragraph number 6. Use more pages as needed.*]

<u>6</u>. Commencing at ¶16 of the attached Statement of Facts, it is law that Plaintiff has provided clear and precise facts sufficient to file this lawsuit against all named Defendants including DOES 1 to 10, Inclusive.

COMPLAINT
PAGE <u>3</u> OF <u>30</u> [*JDC TEMPLATE – Rev. 05/2017*]

# LIST OF ADDITIONAL DEFENDANTS

(Continued from Defendant No. 3 of the Complaint and Request for Injunctive Relief)

**Defendant No. 4**

> WAYPOINT HOMES, INC.
> 1999 Harrison Street, 22nd Floor
> Oakland, Alameda County
> California 94612
> (972) 421-3600 or (855) 224-5484
> rsvp@invitationhomes.com and anitra.fludd@invitationhomes.com

**Defendant No. 5**

> WIEL BRIEN, LLC
> 8665 E. Hartford Drive, Suite 200
> Scottsdale, Maricopa County
> Arizona 85255
> (972) 421-3600 or (855) 224-5484
> rsvp@invitationhomes.com and anitra.fludd@invitationhomes.com

**Defendant No. 6**

> COLIN WIEL
> 1611 Telegraph Avenue
> Oakland, Alameda County
> California 94612

**Defendant No. 7**

> DOUGLAS R. BRIEN
> 1611 Telegraph Avenue
> Oakland, Alameda County
> California 94612

**Defendant No. 8**

> HARRIS ROSALES & HARRIS LLP
> 1056 Division Street
> Pleasanton, Alameda County
> California 94566
> (925) 417-8700
> scott.harris@hrhlawoffices.com and info@hrhlawoffices.com

**Defendant No. 9**

> KEVIN A. HARRIS
> 1056 Division Street
> Pleasanton, Alameda County
> California 94566
> (925) 417-8700
> kevin.harris@hrhlawoffices.com and info@hrhlawoffices.com

Page __4__ of __30__

# LIST OF ADDITIONAL DEFENDANTS
(Continued from Named Defendant No. 9 of the Complaint and Request for Injunctive Relief)

**Defendant No. 10**

FREDERICK C. TUOMI
1717 Main Street, Suite 2000
Dallas, Dallas County
Texas 75201
(972) 421-3600 or (855) 224-5484
alicia.saul@invitationhomes.com and rsvp@invitationhomes.com

**Defendant No. 11**

CHARLES D. YOUNG
1717 Main Street, Suite 2000
Dallas, Dallas County
Texas 75201
(972) 421-3600 or (855) 224-5484
jnanoff@invitationhomes.com and alicia.saul@invitationhomes.com

# PARTIES

**Plaintiff**

1. EDWARD C. TIDWELL ("Plaintiff") an Individual, the ex-husband of Phyllis Venson ("Venson"), the father of Edward C. Tidwell, Jr. ("Tidwell, Jr.") and Tanesha C-M Tidwell ("Tidwell"). The Complaint and Request for Injunctive Relief (FRCP, Rule 65) reflects Plaintiff resides at 81 Carol Lane, Apt. # 208, Oakley, California 94561.

**Defendants**

1. CSHP ONE LP ("Defendant" or "CSHP One"), a Delaware Limited Partnership, is registered as a Foreign entity with (the "CASOS") California Secretary of State under Entity ID No.: 201710900007, and the Agent for Service of Process for CSHP One is the Corporation Service Company Which Will Do Business in California as CSC – Lawyers Incorporating Service located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

2. CSH PROPERTY ONE, LLC ("Defendant" or "CSH Property"), a Delaware Limited Liability Company, is registered as a Foreign entity with the CASOS under Entity ID No.: 201622110007, and the Agent for Service of Process for CSH Property is the Corporation Service Company Which Will Do Business in California as CSC – Lawyers Incorporating Service located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

3. INVITATION HOMES INC. ("Defendant" or "INVH"), a Delaware Corporation, is registered with (the "DESOS") Delaware Secretary of State under Entity ID No.: 6172492, however,

Page **5** of **30**

**PARTIES**
(Continue)

INVH is not registered with the CASOS. The Agent for Service of Process for INVH is RL&F Service Corp. located at 920 N. King Street, 2nd Floor, Wilmington, Delaware 19801.

4.    WAYPOINT HOMES, INC. ("Defendant" or "Waypoint"), a California Corporation, is a dissolved entity according to the CASOS' Entity ID No.: C3355830, Waypoint's Agent for Service of Process is the Corporation Service Company Which Will Do Business in California as CSC – Lawyers Incorporating Service located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

5.    WIEL BRIEN, LLC ("Defendant" or "Wiel Brien"), a California Limited Liability Company, is prohibited from carry on business by the CASOS under Entity ID No.: 200915510109, Wiel Brien's Agent for Service of Process is CT Corporation System located at 818 Seventh Street, Suite 930, Los Angeles, California 90017.

6.    DOUGLAS R. BRIEN ("Defendant" or "Brien), an Individual, Plaintiff believes and thereon alleges was the Co-Chief Executive Officer and Director prior to dissolution of Waypoint. Defendant Brien is the Manager and Director of Wiel Brien, however, Wiel Brien is under suspension by the CASOS.  It is law Defendant Brien may be served the Summons and Complaint and related documents at his office Wiel Brien Investments LLC located at 1611 Telegraph Avenue, Suite 1200, Oakland, California 94612.

7.    COLIN WIEL ("Defendant" or "Wiel"), an Individual, Plaintiff believes and thereon alleges was the Chief Investment Officer and Director prior to dissolution of Waypoint.  Defendant Wiel is the Manager and Director of Wiel Brien, however, Wiel Brien is under suspension by the CASOS.  It is law Defendant Wiel may be served the Summons and Complaint and related documents at his office Wiel Brien Investments LLC located at 1611 Telegraph Avenue, Suite 1200, Oakland, California 94612.

8.    HARRIS ROSALES & HARRIS LLP ("Defendant" or "Harris Rosales"), a California Limited Liability Partnership, operates as a law firm located at 1056 Division Street, Pleasanton, California 94566, however, it is unclear if Harris Rosales is registered with the CASOS.

9.    KEVIN A. HARRIS ("Defendant" or "Harris"), an Individual, Plaintiff believes and thereon alleges is an Attorney licensed to practice in the legal arena with the law firm of Harris Rosales located at 1056 Division Street, Pleasanton, California 94566.

10.  FREDERICK C. TUOMI ("Defendant" or "Tuomi"), an Individual, Plaintiff believes

Page _6_ of _30_

and thereon alleges Defendant Tuomi is the President and Chief Executive Officer for INVH, Defendant Tuomi's office location is 1717 Main Street, Suite 2000, Dallas, Texas 75201.

11. CHARLES D. YOUNG ("Defendant" or "Young"), an Individual, Plaintiff believes and thereon alleges Defendant Young is the Chief Operating Officer for INVH, Defendant Young's office location is 1717 Main Street, Suite 2000, Dallas, Texas 75201.

## INTRODUCTORY FACTS

12. Plaintiff introduce sufficient evidence here that all Defendants are guilty as proven by undisputed facts provided in the Complaint including the Exhibits and the supporting documents. The court may take judicial notice of the facts stated by Plaintiff that Defendants are picking up from where the bankers, the financial institutions, the sub-prime mortgage lenders, the wall street players and all the other predators left off before going underground with their carts of filthy lucre.

13. It is no secret around 2001 to the date hereof the fraudulent and predatory mortgage lending practices, the grueling real estate sales and purchase schemes, the illegal non-judicial foreclosure sales, and the fake mortgage modification scam was designed by the banks, the sub-prime mortgage lenders, the financial institutions and others to annihilate the trust of decent and hardworking citizens and consumers seeking to lay hold of the opportunity to own their home.

14. By the time the dust began to settle in 2013 the damage had already been done, it is overwhelmingly evident the State and Federal Courts and the State and Federal Government knew in every County of this State that there were innocent victims sprawled out on the battlefield suffering from mental health issues and medically disabling conditions as a direct result of the predatory lenders' home invasions. The battlefields many victims once referred to as their communities were covered with homeowners' blood and the blood of their spouses, families, children, love ones and neighbors.

15. Plaintiff is a citizen and a consumer of this State, it is his duty to fellow citizens and other consumers to complain to the court about the acts of these serial copycats. Plaintiff provides an accurate composite sketch here of each serial copycat the Defendants for their fraudulent, unlawful and unfair business practices with hope to pick the predators out of the line-up. During the entire term of the Waypoint Residential Lease Agreement ("the Lease Agreement") dated February 15, 2013, Plaintiff provides sufficient facts according to the Qis, LLC ("Qis") June 25, 2013 Merger, and upon recordation on August 9, 2013 of Acme Ability, LLC's ("Acme") Grant Deed, it is overwhelmingly evident Waypoint wasn't acting as Property Manager and Leasing Agent for Acme the alleged Landlord and Owner of the Property since Acme had already granted its beneficial interest to the property over to Qis.

Page __7__ of _30_

# STATEMENT OF FACTS

16. Plaintiff is informed and believe, and on that basis allege undisputed facts presented herein successfully pick all Defendants out of the line-up for their fraudulent, unfair and unlawful business practices and Defendants' unfair housing discriminatory and retaliatory acts described in the following particulars:

17. Pursuant to Federal Rules of Civil Procedure ("FRCP"), Rule 65, Plaintiff's Injunctive Relief is appropriate in that an actual controversy exists with respect to the alleged Property Manager and Leasing Agent, and the Landlord and Owner of (the "Property") located at 5 Echo Circle, Antioch, California 94509 that is the subject of this action.

18. To preserve the status quo, it is law, under FRCP, Rule 65, that the District Court may at least grant a temporary restraining order and a preliminary injunction until examination and judicial notice has been taken of all the evidence presented herein commencing with the fraudulent Waypoint Lease Agreement dated February 15, 2013, Waypoint's Renewal Rental Agreement (the "Rental Lease") dated February 9, 2017, and INVH's faulty Renewal Residential Lease Agreement (the "Renewal Lease") dated May 29, 2018.

19. The Register of Actions dated August 19, 2019 shows Kevin A. Harris, Esq. of Harris Rosales & Harris LLP as Attorneys for Waypoint and Acme knew under the fraudulent Waypoint Lease Agreement that Acme v. Venson, et al.-Case No.: PS14-0669 was filed on May 29, 2014 in the Superior Court of California, Contra Costa County, Pittsburg to unjustly enrich Defendants while Plaintiff, his ex-wife Venson, his son Tidwell, Jr., his daughter TTidwell and grandson suffer serious injuries, harm and irreparable damages as a direct result of Defendants' aggressive maneuvers and manipulative tactics evidenced herein.

20. Mr. Harris and his firm as Attorneys for CSHP One filed on January 8, 2020 the fatally defective Summons and Complaint Unlawful Detainer (the "Complaint") including Exhibits in the Superior Court-Case No.: PS20-0021 namely CSHP One v. Venson, et al. and DOES 1 to 10, Inclusive.

21. Plaintiff believes and thereon alleges at the time Venson, Tidwell, Jr. and TTidwell's contractual relationship came into existence under the Lease Agreement and the Rental Lease with Waypoint as Property Manager and Leasing Agent for Acme, Qis, and CSH Property that, pursuant to

Page __8__ of __30__

California Code of Civil Procedure (CCP) § 430.10(b), the entity which filed the past and instant unlawful detainer action lacked the legal capacity to sue, because the August 9, 2013 chain of title on record with (the "Recorder") Contra Costa County Recorder Office shows the Defendants who purport to be the owners weren't the lawful owner of the Property.

22. Plaintiff believes and thereon alleges that at the time Venson and Tidwell, Jr. executed the Lease Agreement and the Rental Lease with Waypoint as Property Manager and Leasing Agent for Acme, and CSH Property, and the INVH Renewal Lease that, pursuant to CCP § 430.10(d), substantial evidence support Plaintiff's assertions there is a defect in the agreement that the Defendant in the instant unlawful detainer action who purport to be the owner isn't the lawful owner of the Property because of the discrepancies in the chain of title on record with the Recorder.

23. Attached hereto as Exhibit A is a true copy of the Complaint including Exhibits filed by Mr. Harris on behalf of CSHP One that shows the Superior Court's Register of Actions Case No.: PS20-0021 bears Venson, Tidwell, Jr. and TTidwell timely responded with specific facts showing the Complaint was filed for the sole purpose to cause Venson, Tidwell, Jr. and TTidwell injuries, harm and irreparable damages.

24. Pursuant to CCP § 430.10(a), (e) and (f), defendants Venson, Tidwell, Jr. and TTidwell respectfully requested that the Superior Court on its own order dismiss the Complaint with prejudice based on the evidence in TTidwell's Prejudgment Claim of Right To Possession (the "Prejudgment Claim") including Exhibit 1 thru Exhibit 5 filed on January 17, 2020.

25. Pursuant to CCP § 430.10(f), the pleading is "uncertain" in that the Landlord and Owner of the Property hasn't been determined thus the Complaint is ambiguous and unintelligible. As a matter of law CCP § 430.10(e), since the evidence presented herein support the facts serious discrepancies exists in the chain of title to the Property "the pleading does not state facts sufficient to constitute a cause of action", therefore, under CCP § 430.10(a) the Superior Court "has no jurisdiction of the subject of the cause of action alleged in the pleading."

26. The District Court is within its jurisdictional authority to demand for lack of jurisdiction the Superior Court must dismiss the Complaint, pursuant to CCP § 430.10(a), (b), (d), (e) and (f), or at least order the Superior Court to stand down under FRCP, Rule 65 from ruling on the matter based on

Page ___9___ of __30__

undisputed facts the pleading contradicts a previous action over the same issues, and because the Complaint is uncertain as evidenced herein and as provided in TTidwell's Prejudgment Claim including Exhibit 1 thru Exhibit 5, which a true copy of the Prejudgment Claim is attached hereto as Exhibit B.

27.  Under FRCP, Rule 65, it is law the District Court is within its jurisdictional authority to demand that the Superior Court refrain from ruling adverse to Venson, Tidwell, Jr. and TTidwell in the instant unlawful detainer action, and pursuant to CCP § 430.10(a), (b), (d), (e) and (f), the Superior Court must dismiss the Complaint with prejudice based on facts alleged in Tidwell, Jr.'s Answer filed on January 21, 2020, a true copy of is attached hereto as Exhibit C, and his Amended Answer including Exhibit 1 thru Exhibit 4 filed on January 23, 2020, which a true copy of Tidwell, Jr.'s Amended Answer is attached hereto as Exhibit D.

28.  Pursuant to CCP § 430.10(a), (b), (e), (d) and (f), the Superior Court may dismiss the Complaint with prejudice for just cause alleged in TTidwell's Answer including Exhibit 1 thru Exhibit 4 filed on January 27, 2020, a true copy of is attached hereto as Exhibit E.  Alternatively, pursuant to FRCP, Rule 65, the Superior Court must stand down and refrain from erroneously ruling contrary to Venson, Tidwell, Jr. and TTidwell in the instant unlawful detainer action.

29.  Tidwell, Jr. and TTidwell's Answers and the Amended Answer obviously present undisputed facts CSHP One, Wiel Brien, INVH, Mr. Harris, his firm and all Defendants, in their capacity, made a costly mistake filing the instant unlawful detainer action, which is evident in the Prejudgment Claim of TTidwell wherein she attached as Exhibit 3 a true copy of Acme's Limited Liability Company Certificate of Cancellation ("Cancellation Certificate") filed on July 22, 2013 with the CASOS that prohibit Acme an unregistered entity from maintaining a civil action in this State.

30.  Attached as Exhibit 4 to TTidwell's Prejudgment Claim is a true copy of the Register of Actions dated August 19, 2019 that shows Waypoint, Acme, Mr. Harris and all Defendants knew Acme v. Venson, et al.-Case No.: PS14-0669 was filed on May 29, 2014 in the Superior Court to unjustly enrich all named Defendants while Venson, Tidwell, Jr. and TTidwell suffered further injuries, harm and irreparable damage.

31.  Prior to filing the faulty Complaint against Venson, et al.-Case No.: PS14-0669, it is evident Waypoint, Acme, Mr. Harris and all Defendants knew Acme had already filed on July 22, 2013

Page _10_ of _30_

its Cancellation Certificate with the CASOS.

32. California Corporation Code (CCC) § 17456, states "A foreign limited liability company shall not maintain any action, suit or proceeding in any court of this state until it has registered", in addition, CCC § 17708(a) states "A foreign limited liability company shall not maintain an action or proceeding in this state unless it has a certificate."

33. CSHP One, Mr. Harris and all Defendants were fully aware prior to Acme's Cancellation Certificate was filed on July 22, 2013 that Acme filed on June 25, 2013 its Articles of Merger (the "Merger") with (the "WYSOS") State of Wyoming, Secretary of State. Attached hereto as Exhibit F is a true copy of the Merger that provide undisputed facts Wiel Brien, Waypoint, Acme, Brien, Wiel, Mr. Harris and all Defendants knew Acme the Disappearing Organization had already merged with and into Qis the Surviving Organization.

34. Waypoint, Acme, Wiel, Brien, Mr. Harris and all Defendants knew as early as June 25, 2013 according to Qis' Merger that Waypoint's Lease Agreement dated February 15, 2013 was defective on July 22, 2013 prior to filing on May 29, 2014 the unlawful detainer action in the Superior Court namely Acme v. Venson, et al.-Case No.: PS14-0669.

35. All Defendants' acts were careless and reckless with the deliberate intentions to unjustly enrich each Defendant while causing further injuries, harm and irreparable damages to Plaintiff and his family, Plaintiff's ex-wife Venson, his son Tidwell, Jr., his daughter TTidwell and grandson.

36. CSHP One, CSH Property and all Defendants in concert with INVH, Waypoint, Wiel Brien and each other were aware prior to their discussion of the retainer agreement to employ Mr. Harris to provide legal representation that each Defendant knew Waypoint and Acme had filed the May 29, 2014 unlawful detainer action Case No.: PS14-0669 and that INVH and CSHP One filed on January 8, 2020 their unlawful detainer action Case No.: PS20-0021 in the Superior Court.

37. Attached as Exhibit 1 to the Prejudgment Claim (attached hereto as Exhibit E) is a true copy of Waypoint's Lease Agreement dated February 15, 2013 that shows Waypoint as Property Manager and Leasing Agent, Acme as Landlord and Owner, and Venson and Tidwell, Jr. as Tenants, however, after Acme filed on July 22, 2013 its Cancellation Certificate, it is evident Waypoint, Acme and Mr. Harris knew Waypoint and Acme should've ceased on or about August 1, 2013 from collecting

Page  11  of  30

monthly rent payments from Venson, Tidwell, Jr. and TTidwell since there wasn't an actual contractual relationship between Waypoint, Acme, Qis and Venson, Tidwell, Jr. and TTidwell.

38. Attached hereto as Exhibit F is a true copy of the Merger of Qis filed on June 25, 2013 with the WYSOS that reflects Qis is the Surviving Organization prior to Mr. Harris' filing in the Superior Court on May 29, 2014, Acme's unlawful detainer Case No.: PS14-0669, it is overwhelmingly evident Waypoint, Wiel Brien, Mr. Harris, his firm, Brien, Wiel and all Defendants knew the Complaint was filed to cause Venson, Tidwell, Jr. and TTidwell injuries, harm and irreparable damages. Waypoint, Wiel Brien, Mr. Harris, his firm, Brien, Wiel and all Defendants knew the Waypoint (Acme) Lease Agreement dated February 15, 2013 should've been renewed prior to August 1, 2013 or certainly about August 9, 2013 to show Qis as Landlord and Owner of the Property instead of Acme.

39. Attached hereto as Exhibit G is a true copy of the Grant Deed DOC-2013-0199229-00 record on August 9, 2013 with the Recorder in support of Plaintiff's assertions Acme granted its beneficial interest to the Property over to Qis, therefore, the Waypoint Lease Agreement dated February 15, 2013 should've been renewed on or around June 25, 2013 or at least prior to August 1, 2013 to show Qis as Landlord and Owner instead of Acme. Additionally, prior to or at least around August 1, 2013 Waypoint and Acme should've ceased from collecting monthly rent payments from Venson, Tidwell, Jr. and TTidwell under the Waypoint Lease Agreement dated February 15, 2013.

40. Attached hereto as Exhibit H is a true copy of the Grant Deed DOC-2016-0195322-00 recorded on September 22, 2016 with the Recorder that provides sufficient facts Qis granted its beneficial interest to the Property over to CSH Property, which the point is CSHP One, INVH, CSH Property, Mr. Harris, Waypoint, Wiel Brien and all named Defendants knew each conspired to collect monthly rent payments from Venson, Tidwell, Jr. and TTidwell under the February 15, 2013 Waypoint Lease Agreement after the June 25, 2013 Merger of Acme with and into Qis.

41. CSHP One, CSH Property, Waypoint and all Defendants knew on June 25, 2013 upon filing the Qis Merger and recordation on August 9, 2013 of the Grant Deed DOC-2013-0199229-00 that all Defendants conspired against Venson, Tidwell, Jr. and TTidwell to unjustly enrich each Defendants by fleecing and collecting monthly rent payments from Venson, Tidwell, Jr. and TTidwell under the Waypoint Lease Agreement dated February 15, 2013.

Page *12* of *30*

42. Attached hereto as Exhibit B is a true copy of TTidwell's Prejudgment Claim, which attached to the Prejudgment Claim as Exhibit 2 is a true copy of Waypoint's Rental Lease dated February 9, 2017 that support Plaintiff's assertions Waypoint is the Property Manager and Leasing Agent and CSH Property is the Landlord and Owner of the Property instead of CSHP One and the terms of the Rental Lease is from February 9, 2017 through May 28, 2018.

43. An actual controversy exists in that attached hereto as Exhibit F is a true copy of the Merger of Qis that provide sufficient facts effective June 25, 2013 Qis is the Surviving Organization instead of Acme or CSH Property, in addition, attached hereto as Exhibit G is a true copy of the Grant Deed DOC-2013-0199229-00 recorded on August 9, 2013 with the Recorder in support of Plaintiff's assertions Acme granted its beneficial interest to the Property over to Qis instead of CSH Property.

44. It is law that Plaintiff has presented sufficient facts in connection with the defective Waypoint's Lease Agreement dated February 15, 2013 and the Waypoint's Rental Lease dated February 8, 2017 that bear witness effective June 25, 2013 upon filing of the Qis Merger and/or at least about August 9, 2013 upon recordation of the Grant Deed DOC-2013-0199229-00 that Waypoint on behalf of Acme and CSH Property didn't have legal rights around August 1, 2013 through and including October 1, 2016 to receive monthly rent payments from Venson, Tidwell, Jr. and TTidwell under the defective February 15, 2013 Waypoint Lease Agreement.

45. Attached hereto as Exhibit H is a true copy of the Grant Deed DOC-2016-0195322-00 recorded on September 22, 2016 with the Recorder to support of Plaintiff's assertions that Qis granted its beneficial interest to the Property over to CSH Property instead of CSHP One.

46. Further controversy exists in that attached hereto as Exhibit E is the Answer of TTidwell, which attached as Exhibit 1 is a true copy of Waypoint's Certificate of Dissolution filed on February 2, 2017 with the CASOS that evidence Plaintiff provide sufficient facts the Waypoint and CSH Property Rental Lease dated February 9, 2017 is defective since Waypoint knew it was a dissolved and unregistered entity in violation of CCC § 200(a) that states "One or more natural persons, partnerships, associations or corporations, domestic or foreign, may form a corporation under this division by executing and filing articles of incorporation" and CCC § 200(c) states "The corporate existence begins upon the filing of the articles and continues perpetually, unless otherwise expressly provided by law or in the articles."

Page *13* of *30*

47.  Waypoint and CSH Property and all Defendants knew Waypoint was a dissolved and unregistered entity carry on business in this State.

48.  Several demands for production of documents have been made as indicated in Tidwell, Jr.'s Answer attached hereto as Exhibit C, his Amended Answer attached hereto as Exhibit D, and TTidwell's Answer attached hereto as Exhibit E.  Attached to Tidwell, Jr.'s Amended Answer as Exhibit 1 thru Exhibit 3 is INVH's Resident Ledgers and their Purged Resident Ledger and Exhibit 4 is Plaintiff's correspondence dated September 10, 2019 to Dallas B. Tanner, Young, and Brenda Vargas, who are employees of INVH that provide sufficient facts as to several copy requests for Money Orders and Cashier's Checks paid by Venson, Tidwell, Jr. and TTidwell to Waypoint and INVH to satisfy monthly rent payments.

49.  Except to the enclosures mentioned in his correspondence attached hereto as Exhibit I, Plaintiff provides a true copy of his correspondence dated January 30, 2020 to Tuomi and CSH Property that was cc'd to Young and Mr. Tanner.  Plaintiff's correspondence reflects he specifically requested copies of Money Orders and Cashier's Checks purchased by Venson, Tidwell, Jr. and TTidwell to make monthly rent payments.

50.  In ¶2, Attachment 5e of Tidwell, Jr.'s Answer that a true copy of is attached hereto as Exhibit C, it is undisputed facts as indicated in INVH's Purged Resident Ledger dated August 16, 2019 that Plaintiff requested copies, front and back, of the "cancelled Money Orders and Cashier's Checks dated August 1, 2013 to December 5, 2013" from CSHP One, Mr. Harris and INVH.

51.  In ¶3, Attachment 5e of Tidwell, Jr.'s Answer attached hereto as Exhibit C, it is evident CSHP One, Mr. Harris and INVH were to produce copies, front and back, of the cancelled Money Order # 24264452204 dated February 9, 2017 in the sum of $900.00, the Cashier's Check # 0014503434 dated February 9, 2017 in the sum of $1,300.00, and copies, front and back, of the cancelled Money Orders # 207203571696 and # 207203571685 dated May 8, 2017 in the sum of $300.00 and $1,000.00 together with the Cashier's Check # 0014521557 dated May 8, 2017 in the sum of $800.00.

52.  Plaintiff hereby demand that INVH, Wiel, Brien, Waypoint, Tuomi, Young and Mr. Harris collectively provide copies, front and back, of the Money Orders and Cashier's Checks dated January 1, 2014 through and including September 1, 2016 as identified in INVH's Purged Resident

Page 14 of 30

Ledger and their Resident Ledger dated August 16, 2019 that a true copy of is attached to Tidwell, Jr.'s Answer attached hereto as Exhibit C.

53. Plaintiff hereby demand that INVH, Wiel, Brien, Waypoint, Tuomi, Young and Mr. Harris collectively provide copies, front and back, of each Money Orders and/or Cashier's Checks identified as # 19713404845 and # 0014521217 in the respective amount $900.00 and $747.00.

54. Plaintiff demand copies, front and back, of the Money Orders and/or Cashier's Checks dated January 1, 2014 through and including September 1, 2016 as identified in INVH's Purged Resident Ledger and their Resident Ledger dated August 16, 2019, which a true copy of is attached to Tidwell, Jr.'s Answer attached hereto as Exhibit C.

55. Attached hereto as Exhibit A is a true copy of the Complaint that bear witness CSHP One, INVH, Mr. Harris and his firm deviously attached as Exhibit 1 to the Complaint only part Page 1 to 17 of 35 of INVH's Renewal Lease dated May 29, 2018. The Renewal Lease clearly shows INVH as the Property Manager and Leasing Agent, CSHP One as Landlord and Owner and Venson and Tidwell, Jr. as Tenants.

56. At ¶5 of Attachment 3l, Page 2 of 49 of TTidwell's Answer that a true copy of is attached hereto as Exhibit E, it is undisputed facts TTidwell called to the Superior Court's attention that CSHP One, INVH, Mr. Harris and his firm knowingly schemed to mislead the court and to place Venson, Tidwell, Jr. and TTidwell at a disadvantage in that CSHP One, INVH, Mr. Harris and his firm intentionally attached only Page 1 to 17 of 35 of INVH's Renewal Lease as Exhibit 1 to CSHP One's unlawful detainer Complaint.

57. Attached hereto as Exhibit E is TTidwell's Answer including Exhibit 2 that is a true copy of INVH's Renewal Lease Page 1 to 35 in support of Plaintiff's assertions that CSHP One, INVH and Mr. Harris and his firm willfully exercised their scam and legal maneuvers to play the court.

58. Commencing with ¶23 as stated above after the WYSOS filed Qis' Merger on June 25, 2013 showing Qis as the Surviving Organization, and after the CASOS filed on July 22, 2013 Acme's Cancellation Certificate it is evident Acme is a cancelled and unregistered entity. The question here is effective June 25, 2013 or at least around August 9, 2013 did Waypoint as Property Manager and Leasing Agent and Acme as Landlord and Owner have legal authority to collect monthly rent payments under the Waypoint Lease Agreement dated February 15, 2013?

Page _15_ of _30_

59. Plaintiff respectfully call to this Court's attention Page 2 of 49, ¶5 of Attachment 3l to TTidwell's Answer attached hereto as Exhibit E that provide sufficient facts CSHP One, INVH, Mr. Harris and his firm knew "the Method of Rent Payment Addendum for INVH and CSHP One, and the Method of Rent Payment Addendum for Waypoint and CSH Property shows the same address: 3841 North Freeway Blvd. Ste. 290 Sacramento, CA 95834 and the rent payment options are identical."

60. The Waypoint Renewal Rental is attached as Exhibit 2 to TTidwell's Prejudgment Claim that is attached hereto as Exhibit B, and a true copy of the INVH Renewal Lease is Exhibit 2 to TTidwell's Answer attached hereto as Exhibit E. It is evident "the Method of Rent Payment Addendum for INVH and CSHP One, and the Method of Rent Payment Addendum for Waypoint and CSH Property shows the same address: 3841 North Freeway Blvd. Ste. 290 Sacramento, CA 95834 and the rent payment options are identical."

61. Commencing with ¶28 as stated above after the WYSOS filed Qis' Merger on June 25, 2013 showing Qis as the Surviving Organization, and after the CASOS filed on July 22, 2013 Acme's Cancellation Certificate that Acme is an unregistered entity. The question here is effective August 1, 2013 or at least around August 9, 2013 did Waypoint as Property Manager and Leasing Agent have legal authority to collect monthly rent payments under the Waypoint Lease Agreement dated February 15, 2013 although the Grant Deed recorded on August 9, 2013 clearly provide undisputed facts Acme granted its beneficial interest to the Property over to Qis?

62. Did Waypoint a dissolve and unregistered entity have legal authority under the February 8, 2017 Renewal Rental to collect monthly rent payments on behalf of CSH Property as reflected in Exhibit 2 to TTidwell's Prejudgment Claim that is attached hereto as Exhibit B?

63. The District Court has jurisdictional authority to issue appropriate orders demanding it is law CSHP One, Wiel Brien, Waypoint, CSH Property, INVH, Tuomi, Wiel, Brien, Mr. Harris and his firm must produce copies of all Money Orders and Cashier's Checks specifically identified above commencing at ¶¶41-46, which in strict compliance with applicable law the request for production copies and documents is sufficient to support Plaintiff's assertions and to carry his burden of proof.

64. The demands for production are extremely urgent to show just cause for Plaintiff's need to apply for FRCP, Rule 65 relief and to carry his burden of proof for Declaratory Judgment, in

Page 16 of 30

addition, to prevent any further injuries, harm and irreparable damages directly caused by the Waypoint and Acme's Lease Agreement dated February 15, 2013 attached as Exhibit 1 and the Renewal Rental attached as Exhibit 2 to the Prejudgment Claim that is attached hereto as Exhibit B.

65. This Court has jurisdictional authority to issue the appropriate orders demanding it is law CSHP One, Wiel Brien, CSH Property, INVH, Tuomi, Wiel, Brien and Mr. Harris produce under penalty sufficient evidence to support whether Waypoint under the Lease Agreement dated February 15, 2013 on behalf of Qis and CSH Property effective July 1, 2013 through and including May 28, 2018 had legal authority to collect monthly rent payment from Venson, Tidwell, Jr. and TTidwell.

66. This Court has jurisdictional authority to issue the appropriate orders demanding it is law CSHP One, Wiel Brien, CSH Property, INVH, Tuomi, Wiel, Brien and Mr. Harris produce under penalty sufficient evidence to determine whether Waypoint and CSH Property's Rental Lease dated February 9, 2017 attached as Exhibit 2 to the Prejudgment Claim attached hereto as Exhibit B was actually terminated on or before May 28, 2018.

**FIRST CLAIM FOR RELIEF**
**CALIFORNIA UNFAIR COMPETITION LAW**
California Business and Professions Code §§ 17200, 17500, and 17536 et seq.
(All Defendants)

67. Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraph of this Complaint.

68. California's Unfair Competition Law ("UCL") prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [California's False Advertising Law]." California Business and Profession Code ("Cal. Bus. & Prof. Code") §§ 17200, and 17500, et seq.

69. Waypoint, Acme, Wiel Brien, Tuomi, Brien, Wiel, CSH Property, CSHP One, and INVH with the other Defendants willfully violated, and continues to violate, the "unlawful" prong of the UCL by violating the laws of the State of California.

70. The deceptive acts, omissions, and practices of each Defendant constitute unfair and unlawful business acts and practices under the UCL are exhibited in the Complaint commencing with the Waypoint and Acme Lease Agreement dated February 15, 2013, the Waypoint and CSH Property Rental Lease dated February 9, 2017, and the INVH and CSHP One Renewal Lease dated May 29, 2018 offends public policy and has caused massive damages to consumers while Defendants are

Page 17 of 30

unjustly enriched and seeks to profit by violating Plaintiff's civil and legal rights and privileges he and other consumers are protected under state and federal laws.

71. It is established law under Cal. Bus. & Prof. Code § 17500, holds each Defendant accountable and liable for their misrepresentations and false advertisements made in the Complaint and specifically the Waypoint and Acme Lease Agreement, the Waypoint and CSH Property Rental Lease, and the INVH and CSHP One Renewal Lease.

72. Plaintiff, his ex-wife Venson, his son Tidwell, Jr., his daughter TTidwell, and his grandson relied on Defendants' false and misleading statements made in the Waypoint and Acme Lease Agreement, the Waypoint and CSH Property Rental Lease, and the INVH and CSHP One Renewal Lease, which it is overwhelmingly evident commencing at ¶27 the exhibits bear witness each Defendant knew, or should have known, that their statements were false and misleading.

73. Attached hereto as Exhibit E is a true copy of TTidwell's Prejudgment Claim that Exhibit 1 is the Waypoint and Acme Lease Agreement, which Waypoint and Acme deviously offer on Page 13 of 16 at Item 45 their "Lease Plus Rewards-Accumulating Waypoint Rewards."

74. The Waypoint and Acme Lease Agreement is beyond doubt a bait and switch scheme compiled to confuse and mislead consumers in that after Page 16 of 16 there is a four 4-Page addendum entitled "Lease Plus Rewards, Program Terms and Conditions" that in some manner describe how Plaintiff's ex-wife Venson, his son Tidwell, Jr., and his daughter TTidwell may accumulate and earn Waypoints.

75. The Waypoint and Acme Lease Agreement as described in Item 7 of the addendum entitled "Home Purchase Credit" appears to have language styled to intentionally misrepresent that Plaintiff's ex-wife Venson, his son Tidwell, Jr., and his daughter TTidwell may acquire the Property. Waypoint and Acme induced Plaintiff's ex-wife Venson, his son Tidwell, Jr., and his daughter TTidwell to rely on the Lease Plus Rewards, Program Terms and Conditions, although Waypoint and Acme knew it was their intentions to renege on the agreement, which is evident as reflected in the June 25, 2013 Qis Merger, the July 22, 2013 Acme Cancellation Certificate and certainly the Acme Grant Deed DOC-2013-0199229-00.

76. Waypoint and Acme further offered in Item 7 of this addendum that "The credit will be delivered to and disbursed by escrow upon the Close of Escrow in connection with Resident's purchase of the home", furthermore, Item 8 Cash Back Reward of this addendum states "Upon the expiration of the Term or any Renewal Term Resident may instead elect to apply Resident's accumulated

Page 18 of 30 

Waypoints towards a cash reward ("Cash Back Reward") if Resident does not elect to utilized the Home Purchase Credit."

77. As a direct and proximate result of Defendants' fraudulent, unlawful and unfair business practices, Plaintiff, his ex-wife Venson, his son Tidwell, Jr. his daughter TTidwell and his grandson has suffered and will continue to suffer injuries, harm and irreparable damages if Injunctive Relief and/or Declaratory Relief isn't granted.

**SECOND CLAIM FOR RELIEF**
**Violation of Civil Rights and Violation of Americans with Disability Act**
**Interference by Threat, Intimidation or Coercion**
Civil Code Procedure §§ 51.7 and 52.1
(All Defendants)

78. Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraph of this Complaint.

79. After Plaintiff's ex-wife Venson suffered a life threatening stroke on June 30, 2019 that left her temporarily blind, it is evident attached to the Answer of Tidwell, Jr., which a true copy of the Answer is attached hereto as Exhibit C that provides sufficient facts is INVH's email dated August 22, 2019 wherein Ms. Vargas willing admits INVH around July 22, 2019 instructed (the "PG&E") Pacific Gas & Electric Company to close out Venson's account.

80. The email of Ms. Vargas that is attached to Tidwell, Jr.'s Answer also bear witness INVH, CSHP One, Mr. Harris and his firm knew on August 1, 2019 that Plaintiff had already submitted an Intake Form-Housing to (the "DFEH") Department of Fair Employment and Housing to request an investigation as to INVH's unfair housing discriminatory and retaliatory acts including harassment, which it is Plaintiff's belief the discontinuance of Venson's PG&E account was to set the stage to force the instant unlawful detainer eviction by INVH, CSHP One, Mr. Harris and his firm.

81. The acts of INVH, CSHP One, Mr. Harris, his firm and all Defendants were intentionally aimed to threaten, coercion and intimidate with the deliberate intentions to deprive and interfere with Plaintiff, his ex-wife Venson, his son Tidwell, Jr., his daughter TTidwell, and his grandson's legal rights and privileges secured by the Constitution of the United States, the Constitution of the State of California, and the statutory laws of the State of California.

82. Pursuant to CCP §§ 51.7 and 52.1, Plaintiff is entitled to Injunctive Relief and Declaratory Relief as described herein. Plaintiff, his ex-wife Venson, his son Tidwell, Jr., his daughter TTidwell, and his grandson are also entitled to damages pursuant to CCP §§ 52 and 52.1.

Page _19_ of _30_

Complaint and Request for Injunctive and Declaratory Relief
Edward C. Tidwell v. CSHP One LP, et al. Northern District Court of California-Oakland Division

83. Upon amendment of the Complaint it is law Plaintiff may file tort claims or any other claims for relief as prescribed by the laws of the State of California, in addition, Plaintiff will amend this action to include any and further damages as such are just and proper.

84. Plaintiff's correspondence dated September 10, 2019 to INVH, and Young that is attached as Exhibit 4 to the Amended Answer of Tidwell, Jr., which a true copy of the Amended Answer attached hereto as Exhibit D provides sufficient facts on July 11, 2019 (the "City of Antioch") City of Antioch Water Service Department was instructed by INVH to close out Venson's water service account.

85. The Prejudgment Claim of TTidwell is attached hereto as Exhibit E and the Waypoint and Acme Lease Agreement is attached as Exhibit 1, which the point is the City of Antioch's Verification of Tenancy Form attached to the very last page Lease Agreement reflects Acme is the Landlord and Owner, however, the email dated
September 5, 2019 of Jessy Nanoff shows in the Verification of Tenancy Form that CSHP One is the alleged Landlord and Owner, which Plaintiff call these issues to the attention to INVH and Young in his correspondence dated September 10, 2019 attached as Exhibit 4 to the Amended Answer of Tidwell, Jr.

86. As a direct and proximate result of Defendants' threat, intimidation and coercion together with their fraudulent, unlawful and unfair business practices, Plaintiff, his ex-wife Venson, his son Tidwell, Jr. his daughter TTidwell and his grandson has suffered and will continue to suffer injuries, harm and irreparable damages if Injunctive Relief and/or Declaratory Relief isn't granted.

**THIRD CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
CCP §§ 338(d) and (h)
(All Defendants)

87. Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraph of this Complaint.

88. From the Minute Order dated April 10, 2017 of the State of California, Superior Court of Contra Costa County, Martinez-Case No.: MSC16-02091 named Daniel O'Neil v. Donald O'Neal, it is evident Plaintiff present sufficient facts the "Courts of Appeal for the Second and Forth Districts appear to disagree on whether unjust enrichment is a valid claim under California law.  (See *Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 726 (2nd District stating unjust enrichment is a claim) and *Melchior v. New Line Prods., Inc.* (2003) 106 Cal.App.4th 779, 793 (2nd District stating

Page _20_ of _30_

unjust enrichment is not claim); see also, *Peterson v. Cellco* (2008) 164 Cal.App.4th 1583, 1593 (4th District, stating elements of unjust enrichment) and *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370 (4th District stating unjust enrichment is not a claim).)"

89. In *O'Neal* the Superior Court states "In addition to the cases cited by the parties, the Court notes that the First District has recently stated the elements for unjust enrichment. *In Elder v. Pacific Bell Telephone Co.* (2012) 205 Cal. App. 4th 841, 857 the First District stated that "[t]his allegation satisfies 'the elements for a claim of unjust enrichment: receipt of a benefit and unjust retention of the benefit at the expense of another. [Citation.]' (*Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 726; see *Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 50 [in accord].)""

90. The Superior Court's ruling in *O'Neal* bear witness "we will follow those courts that have found that unjust enrichment is a claim under California Law."

91. Plaintiff, his ex-wife Venson, his son Tidwell, Jr., his daughter TTidwell, and his grandson's reliance on the falsity and intentionally misrepresentations made in the Waypoint and Acme Lease Agreement, the Waypoint and CSH Property Rental Lease, and the INVH and CSHP One Renewal Lease caused Plaintiff, his ex-wife Venson, his son Tidwell, Jr. his daughter TTidwell and his grandson to suffer injuries, harm and irreparable damages.

92. All Defendants profited and enjoyed massive financial monetary gain from the other Defendants' fraudulent and intentional misrepresentations and their deceptive acts, omissions, and practices solely to unjustly enrich each Defendant.

93. As a direct and proximate result of Defendants' unlawful and unfair business practices Plaintiff, his ex-wife Venson, his son Tidwell, Jr. his daughter TTidwell and his grandson has suffered and will continue to suffer injuries, harm and irreparable damages if Injunctive Relief and/or Declaratory Relief isn't granted.

## FOURTH CLAIM FOR RELIEF
## EQUITABLE TOLLING
(All Defendants)

94. Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraph of this Complaint.

95. Plaintiff, his ex-wife Venson, his son Tidwell, Jr. his daughter TTidwell and his grandson aren't lawyers.

Page _21_ of _30_

96. Plaintiff out of the abundance of precaution plead equitable tolling here to protect his legal rights and privileges to file the Complaint against the Waypoint and Acme and each Defendant for their intentional and fraudulent misrepresentations together with Waypoint and Acme and each Defendants' violations of Cal. Bus. & Prof. Code §§ 17200 and 17500 et seq. and other violations that caused the breach in the Waypoint and Acme Lease Agreement dated February 15, 2013 for the term February 15, 2013 to February 28, 2015, and the breach in the Waypoint and CSH Property Rental Lease dated February 9, 2017 for the term February 9, 2017 to May 28, 2018, in addition, the breach in the INVH and CSHP One Renewal Lease dated May 29, 2019 for the term May 29, 2019 to July 22, 2019.

97. This lawsuit is timely under California's equitable tolling doctrine, it is overwhelmingly evident in the Complaint and the exhibits that Plaintiff didn't discover the defects in the agreements and Defendants' devious and misleading acts until after INVH was informed Plaintiff ex-wife Venson had a stroke on June 30, 2019 that left her temporarily blind.

98. The United States Court of Appeals for the Ninth Circuit reversed a district court's ruling that had dismissed as untimely a putative securities class action brought by investors in a privately-held English building society. The dispute arose from a June 1997 transaction that converted the entity into a publicly traded company called *Halifax PLC ("Halifax")*. The Ninth Circuit's decision in *Hatfield v. Halifax PLC* revived *Hatfield's* claims that she and a class of similarly situated United States investors were deceived into believing that the company's private-to-public conversion would entitle them to free shares in *Halifax*. *Hatfield's* complaint, filed in district court in California eight-and-a-half years after her causes of action arose, alleged that the company promised the free shares to garner support for its conversion plan and then unlawfully limited the shares to investors with United Kingdom addresses. *Hatfield* alleged that she and others were wrongfully deprived of their rights to share in the proceeds from the conversion transaction.

99. The Ninth Circuit applied California's equitable tolling doctrine to conclude that a nearly identical class action filed in 2003 in New Jersey state court tolled the applicable six-year statute of limitations. Because the Court concluded that *Hatfield* had not run afoul of the statute of limitations, the subsequent class action filed in California federal court remained timely.

100. California's equitable tolling doctrine had not previously been applied to toll a statute of limitations based on a prior class action. Instead, California courts and the Ninth Circuit have applied the United States Supreme Court's decision in *American Pipe & Construction Co. v. Utah*. The

Page 22 of 30

*American Pipe* tolling doctrine and its progeny stand for the proposition that, in certain circumstances, a class action's commencement operates to suspend the applicable statute of limitations as to all individual actions filed by asserted members of the class who would have been parties to the first suit if it had been permitted to continue. Unlike the majority of federal Courts of Appeals, the Ninth Circuit has extended *American Pipe* to apply beyond successive individual actions to also toll the statute of limitations for subsequently filed class actions as long as the successive case does not re-litigate an earlier denial of class certification.

101. But rather than analyzing *Hatfield's* claims within the *American Pipe* rubric, the Court concluded that an entirely separate doctrine, California's equitable tolling rule, applied to toll *Hatfield's* individual and class action claims. Significantly, the Court's application of the equitable tolling doctrine served to allow cross-jurisdictional tolling between the New Jersey and California actions. The decision thus stands in contrast to the Court's 2008 decision in *Clemens v. DaimlerChrysler Corporation* that had denied cross-jurisdictional tolling for a successive class action in California where the first class action had been filed in another state. Few states or federal courts allow cross-jurisdictional class action tolling due to concerns that, without all states simultaneously adopting the rule, any state that does so independently could become a refuge for claims that had been unsuccessful in other jurisdictions. Partly in response to that fear, the Court expressly limited its decision to California residents.

102. Plaintiff reiterate here the language the Waypoint and Acme Lease Agreement as described in Item 7 of the addendum entitled "Home Purchase Credit" appears to be styled to intentionally misrepresent that Plaintiff's ex-wife Venson, his son Tidwell, Jr., and his daughter TTidwell may acquire the Property. Waypoint and Acme induced Plaintiff's ex-wife Venson, his son Tidwell, Jr., and his daughter TTidwell to rely on the Lease Plus Rewards, Program Terms and Conditions, although Waypoint and Acme knew it was their intentions to breach and renege on the agreement, which is evident Qis' June 25, 2013 Merger, the July 22, 2013 Acme Cancellation Certificate and certainly the Acme Grant Deed bearing recordation number DOC-2013-0199229-00.

103. As a direct and proximate result of Defendants' unlawful and unfair business practices Plaintiff, his ex-wife Venson, his son Tidwell, Jr. his daughter TTidwell and his grandson has suffered and will continue to suffer injuries, harm and irreparable damages if Injunctive Relief and/or Declaratory Relief isn't granted.

Page 23 of 30

**FIFTH CLAIM FOR RELIEF**
**INJUNCTIVE RELIEF**
FRCP, Rule 65
(All Defendants)

104. Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraph of this Complaint.

105. A real and immediate difference exists between Plaintiff, his ex-wife Venson, his son Tidwell, Jr. his daughter TTidwell and his grandson and Defendants regarding Venson, Tidwell, Jr. and TTidwell's rights and Defendants' duty owed to protect each tenant.

106. Sufficient facts have been plead in the Complaint that Waypoint and Acme and INVH and CHSP One breached the agreement, it is evident there is no plain, adequate or complete remedy at law to address the wrongs described herein. Defendants have made it clear by their repeated unfair housing discriminatory and retaliatory acts closing out Venson's accounts held with (the "PG&E") Pacific Gas & Electric Company, and (the "City of Antioch Water") City of Antioch Water Service Department that Defendants intend to continue these unlawful and unfair business practices designed to specifically to cause Plaintiff, his ex-wife Venson, his son Tidwell, Jr., his daughter TTidwell and his grandson further injuries, harm and irreparable damages.

107. Defendants have also made clear that they intend to continue the practices described herein that they intend to use falsity and deception as evidenced in their unlawful detainer eviction document to erroneously obtain from the Superior Court a Writ of Execution to have the Contra Costa County Sheriff's Office to unlawfully evict in violation of Americans with Disability Act medically disabled Venson and TTidwell from the Property. Unless restrained by this Court, Defendants will continue to implement these unlawful policies and practices.

108. Defendants' acts alleged above violate established constitutional rights of Plaintiffs and Defendants could not reasonably have thought that the conduct of their agents and employees in seizing and destroying Plaintiffs' property was lawful.

109. An actual controversy exists between Plaintiffs and Defendants in that Defendants, their agents and employees, have engaged in the unlawful and unconstitutional acts alleged herein and intend to continue to do so. Plaintiffs claim that these acts are contrary to law and seek a declaration of their rights with regard to this controversy.

110. As a direct and proximate consequence of the acts of Defendants' agents and employees, Plaintiff, his ex-wife Venson, his son Tidwell, Jr., his daughter TTidwell and his

Page _24_ of _30_

grandson have suffered injuries, harm and irreparable damages and will continue to suffer if Defendants aren't ordered to immediately refrain from proceeding with the wrongful unlawful detainer eviction action currently before the Superior Court.

**SIXTH CLAIM FOR RELIEF**
**DECLARATORY RELIEF**
28 U.S.C. § 2201 and FRCP, Rule 57
(All Defendants)

111. Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraph of this Complaint.

112. Plaintiff seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and FRCP, Rule 57 to determine and for adjudicating questions of actual controversy between the parties in the Waypoint and Acme (Qis) Lease Agreement, and the Qis Merger (see ¶¶29-35 above), the Waypoint and CSH Property Rental Lease, and the INVH and CSHP One Rental Lease (see ¶¶48-53 above).

113. Similar as in *Ocotillo Real Estate Investments I, LLC d/b/a Longhorn Self Storage ("Ocotillo")* an actual and substantial controversy exists between Plaintiff, his ex-wife Venson, his son Tidwell, Jr. his daughter TTidwell and his grandson and Defendants as to their respective legal rights and Plaintiff, his ex-wife Venson, his son Tidwell, Jr. his daughter TTidwell and his grandson's entitlement to monetary compensation and acquisition of real property as described in the "Lease Plus Rewards" and "Home Purchase Credit" re accumulation and privileges to earn Waypoints and credits as promised in the Waypoint and Acme (Qis) Lease Agreement addendum.

114. In the Northern District Court of Texas-Dallas Division-Case No.: 3:14-cv-02689-N, your sister court in its order addressed *Ocotillo's* motion to dismiss. The District Court denied the motion and ordered that the case be consolidated into one civil action.

115. The declaratory judgment action was filed on July 28, 2014, in which *Tudor Insurance Company ("Tudor") and Lexington Insurance Company ("Lexington") (collectively, "Carriers")* seek a declaration that they have no duty to provide coverage to *Ocotillo* for losses resulting from alleged hail damage to *Ocotillo's* property. In its motion to dismiss, *Ocotillo* argues that because it has filed a state court action (the "State Court Action") that will resolve all issue between the parties, the Court should abstain from considering this case.

116. *Ocotillo* filed the State Court Action on August 1, 2014. In the State Court Action, *Ocotillo* alleges claims against Carriers and additional defendants for violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act (the "DTPA"), breach of contract, and

Page 25 of 30

negligence. Carriers timely removed the State Court Action. That case is pending in this Court and is captioned civil action number 3:14-CV-3259, *Ocotillo Real Estate Investments I, LLC v. Lexington Insurance Company, et al.* On October 8, 2014, *Ocotillo* filed a motion to remand the removed State Court Action. By separate order of this date, the Court denied the motion to remand on the grounds that *Ocotillo* had improperly joined in-state defendants.

117. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), is "'an enabling act, which confers discretion on the courts rather than an absolute right on a litigant.'" *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). A court must engage in a three-step inquiry when deciding whether to entertain or dismiss a declaratory judgment action. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). It must determine (1) whether a justiciable controversy exists, (2) whether it has authority to grant declaratory relief, and (3) whether, in its discretion, it should decide or dismiss the action. Id. *Ocotillo* does not appear to challenge the first two factors. Yet, for the sake of completeness, see *Am. Bankers Life Assurance Co. of Fl. v. Overton,* 128 F. App'x 399, 401 (5th Cir. 2005) (noting that a court is required to consider all three factors), the Court addresses each factor in turn.

118. The question of whether a declaratory judgment action is justiciable generally turns on whether an "actual controversy" exists. *Orix Credit Alliance* 212 F.3d at 895. "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.'" Id. at 896 (quoting *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)) (alteration in original).

119. There can be little question that an actual controversy exists in the instant case. "The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Orix Credit Alliance*, 212 F.3d at 897. According to *Ocotillo*, it "notified *[Carriers]* that it intended to a file a lawsuit against them" and "sent emails to counsel for *[Carriers]* asking if they were authorized to accept service for their clients." Def.'s Mot. Dismiss 16. Moreover, *Ocotillo* does not dispute the justiciability of this action. Accordingly, the Court concludes that a justiciable controversy exists.

120. Under the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "Under the second element of the *Orix Credit Alliance* test, a district court does not have authority to

Page  of 30

consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under section 2283." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388 n.1 (5th Cir. 2003) (citing *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.,* 996 F.2d 774, 776 (5th Cir. 1993)). Because the declaratory defendant, *Ocotillo*, filed its state court action after *Carriers* filed the declaratory judgment action, mandatory abstention is not required. See, e.g., *Ford v. Monsour*, 2011 WL 4808173, at *3 (W.D. La. 2011). Moreover, neither party argues that the Court lacks authority to grant the declaratory relief requested, and the Court is not aware of any reason it might lack that authority. The Court therefore finds that it has authority to grant relief.

121. "It is now well-settled in the Fifth Circuit that a district court has discretion over whether to decide or dismiss a declaratory judgment action." *Travelers Ins.*, 996 F.2d at 778. In exercising this discretion, a court should consider several nonexhaustive factors (the "*Trejo* factors"):

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

122. *Sherwin-Williams*, 343 F.3d at 388 (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994)). The Court concludes, after weighing all the *Trejo* factors, that dismissal is improper.

123. First, there is no parallel state action currently pending. As previously discussed, Carriers removed the State Court Action, and the Court denied *Ocotillo's* motion to remand that case. That case is currently pending in this Court. As the Fifth Circuit has stated, "the lack of a pending parallel state proceeding . . . is a factor that weighs strongly against dismissal." *Sherwin Williams*, 343 F.3d at 394.

Page 27 of 30

Complaint and Request for Injunctive and Declaratory Relief
Edward C. Tidwell v. CSHP One LP, et al. Northern District Court of California-Oakland Division

However, because the Fifth Circuit does not adopt a per se rule that a Court must hear a declaratory judgment action in the absence of a parallel state action, see id., the Court turns to the remaining *Trejo* factors.

124. Second, *Ocotillo* asserts that *Carriers* filed this action in anticipation of *Ocotillo's* State Court Action. Even if *Carriers* did so, a declaratory action is an appropriate and recognized method of resolving an insurance coverage dispute. See, e.g., *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.,* 267 F. Supp. 2d 601, 630 (E.D. Tex. 2003) (listing declaratory action as among insurer's options under Texas law when faced with defending insured) (quoting *Farmers Tex. Cnty. Mut. Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 522 (Tex. Civ. App. – Austin 1980, writ ref'd n.r.e.)). Moreover, "[f]ederal declaratory judgment suits are routinely filed in anticipation of other litigation." *Sherwin-Williams,* 343 F.3d at 391. "Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" Id. In fact, a "specific and concrete" threat of litigation can in some cases make a declaratory action justiciable in the first place. See *Shields v. Norton,* 289 F.3d 832, 835 (5th Cir. 2002). *Carriers'* filing of this suit, even if it anticipated a later filing by *Ocotillo,* is thus not improper or illegitimate. This factor, then, points toward retaining the action.

125. Third, there is no evidence that *Carriers* engaged in improper forum shopping. *Ocotillo* has not indicated why *Carriers* would have a strategic advantage in this action as opposed to another action. Moreover, this Court, like the state court, will apply Texas state law to this case. Because there is no evidence of forum shopping, the third factor suggests that the Court should not dismiss this case.

126. Fourth, there is no evidence of possible inequities in allowing *Carriers* to proceed in this forum. The fact that *Carriers* filed suit before *Ocotillo* did does not give them an unfair advantage. *Ocotillo* has identified no reason why proceeding here would somehow prejudice it. This factor favors retaining the case.

127. Fifth, this Court provides a convenient forum for the parties and witnesses. The dispute involves property located in *Rowlett,* Texas, which is part of the Dallas Division of the Northern District of Texas. This factor, then weighs in favor of *Carriers.* See *Admiral Ins. Co. v. Little Big Inch Pipeline Co.,* 496 F. Supp. 2d 787, 794 (W.D. Tex. 2007) ("[The fifth factor] does not ask whether the federal court is a more convenient forum than the state court, but only whether the federal court is convenient for all parties.")

Page 28 of 30

128. Sixth, retaining this case would serve the purposes of judicial economy. The previous State Court Action was removed and is currently pending in this Court. As discussed below, this Order consolidates the previous State Court Action and this action. Therefore, retaining the suit would not waste judicial resources as both cases will be litigated in the same forum before the same judge.

129. Seventh, the Court is not being called on to construe a state judicial decree involving the parties from a parallel action. This factor thus points toward not dismissing the lawsuit. See *Mid-Continent Cas. Co. v. Classic Star Grp., LP*, 2012 WL 4195262, at *5 (N.D. Tex. 2012) (concluding that fact that court is not construing state decree means seventh *Trejo* factor weighs in favor of hearing declaratory action); *Admiral Ins.*, 496 F. Supp. 2d at 793 (same).

130. In conclusion your sister, the Texas District Court ruled in favor of *Carriers* stating, the *Trejo* factors weigh in favor of retaining the case. Moreover, the *Trejo* factors weigh in favor of retaining this suit.

## PRAY FOR RELIEF

**WHEREFORE**, Plaintiff prays for, Trial by Jury, Declaratory Judgment and that judgment rendered against each Defendant, as follows:

1. For general and special damages in the sum of Three Million Dollars ($3,500,000.00) or an amount to be proven at trial;

2. For Compensatory, Punitive and Exemplary damages in the sum of Five Hundred Fifty Thousand Dollars ($500,000.00) to punish Defendants and deter others from engaging in similar misconduct or an amount to be proven at trial;

3. For Injunctive Relief, pursuant to FRCP, Rule 65, a temporary restraining order, preliminary and permanent injunction, enjoining and restraining Defendants from engaging in the practices and conduct complained of herein;

4. For a Declaratory Judgment for violations secured under secured under the Constitutional Laws of the United States and the State of California Constitution and the laws that protect Plaintiff;

5. For violations as secured under the Ralph Civil Rights Act of 1976 pursuant to California Civil Code § 51.7;

6. For violations as secured under the Tom Bane Civil Rights Act pursuant to California Civil Code § 52.1;

Page 29 of 30

7. For violations of Americans with Disability Act One Hundred Fifty Thousand Dollars ($150,000.00) each Defendants;

8. For injuries, harm and irreparable damages sustained for violations California Business and Professions Code §§ 17200, 17500 and 17536 et seq.

9. For injuries, harm and irreparable damages sustained for violations of California Corporation Code §§ 17456 and 17208(a) et seq.;

10. For an order directing Defendants to produce copies, front and back, of Money Orders and Cashier's Check demanded herein;

11. For costs of suit herein, including attorney's fees in the event that counsel is retained; and

12. For such other relief as the Court deems just and proper including leave to amend.

Dated: February 21, 2020                    Respectfully submitted,


By _Edward C. Tidwell_____
                    Edward C. Tidwell

Page 30 of 30

# EXHIBIT B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD C TIDWELL, et al.,

        Plaintiffs,

    v.

CSHP ONE LP, et al.,

        Defendants.

Case No.  20-cv-01368-VC

**ORDER DISMISSING CASE**

The lawsuit appears to arise from a housing dispute: Tidwell alleges that the defendants filed an unlawful detainer action against his ex-wife, daughter, and son. He also alleges that a lease agreement that his ex-wife and son signed was defective. Tidwell is the only plaintiff in this case, and he was not a party to the lease or to the unlawful detainer action.

Tidwell's first complaint was dismissed for lack of jurisdiction and for failure to state a claim. He was granted leave to amend and was referred to the Northern District of California's Legal Help Center. He filed an amended complaint alleging violations of the ADA, the Unruh Act, and Sections 1 and 7 of the California Constitution.[1] The amended complaint is difficult to parse, but it does not contain any material facts beyond those he included in the first dismissed complaint. Even taking the allegations of both complaints together, Tidwell has failed to state a claim under any of the laws he cites.

The Court is under an obligation to dismiss this case "at any time" if it determines that the action is frivolous. *See* 28 U.S.C. § 1915(e)(2). Tidwell has repeatedly failed to allege facts

---

[1] Sections 1 and 7 recognize inalienable rights in life, liberty, and property, and declare that people should not be denied equal protections of the laws. Cal. Const. art. I, §§ 1, 7.

giving rise to a cognizable claim. (And the case, moreover, appears to concern a dispute that does not involve him.) Because Tidwell cannot state a plausible basis for relief, this case is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: July 17, 2020

_____
VINCE CHHABRIA
United States District Judge

# EXHIBIT C

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 18 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EDWARD C. TIDWELL, | No.    20-16413 |
| Plaintiff-Appellant, | D.C. No. 3:20-cv-01368-VC |
| v. | Northern District of California, San Francisco |
| CSHP ONE LP; et al., | ORDER |
| Defendants-Appellees. | |

Before: O'SCANNLAIN and CHRISTEN, Circuit Judges.

Appellant's motion for summary disposition (Docket Entry No. 5) is denied.

Appellant's motion for appointment of counsel (Docket Entry No. 4) is denied. No motions for reconsideration, clarification, or modification of this denial shall be filed or entertained.

The opening brief is due October 28, 2020; the answering brief is due November 30, 2020; and the optional reply brief is due within 21 days after service of the answering brief.

Because appellant is proceeding without counsel, the excerpts of record requirement is waived. *See* 9th Cir. R. 30-1.2. Appellees' supplemental excerpts of record are limited to the district court docket sheet, the notice of appeal, the judgment or order appealed from, and any specific portions of the record cited in the answering brief. *See* 9th Cir. R. 30-1.7.

LAB/MOATT