United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RIVERA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>INVITATION HOMES, INC.,<br><br>    Defendant. | Case No. 18-cv-03158-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT AND DENYING MOTION FOR LEAVE TO FILE AMICUS BRIEF**<br><br>Re: Dkt. Nos. 34, 49 |

Now before the Court for consideration is the motion to dismiss filed by Defendant Invitation Homes, Inc. ("Defendant" or "IH"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds this motion suitable for disposition without oral argument. *See* Civil L.R. 7-1(b). For the reasons set forth below, the Court HEREBY GRANTS Defendant's motion to dismiss.[1]

**BACKGROUND**

Plaintiff Jose Rivera ("Mr. Rivera") filed his original complaint on May 25, 2018 and subsequently amended the complaint on August 17, 2018. (Dkt. Nos. 1, 18.) Defendant moved to dismiss, and on November 8, 2019, the Court issued an order granting Defendant's motion to dismiss Mr. Rivera's non-California claims for lack of standing and his claim for violation of the "unfair" prong of the UCL. (Dkt. No. 25.) The Court afforded Plaintiff the opportunity to amend. On July 19, 2019, Mr. Rivera and ten additional named plaintiffs residing in states other than

---

[1] Plaintiffs seek judicial notice of several documents in connection with their opposition brief. The Court grants Plaintiffs' unopposed request for judicial notice because the documents are public filings made with government entities and thus are matters of public record not subject to reasonable dispute. Fed. R. Evid. 201(b); *Khoja v. Orezigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

1 California filed the Second Amended Complaint ("SAC") asserting violations of the laws of their respective states and seeking to represent classes of tenants from each state. (Dkt. No. 31.)

IH owns, leases, and manages rental homes across the country in twelve states. (SAC ¶¶ 3, 19.) Plaintiffs allege that IH was the product of a November 2017 merger between two entities: Invitation Homes, which went public in February 2017, and Waypoint Homes, another large home rental firm. (*Id.* ¶ 19.) Plaintiffs allege that IH does a substantial amount of business in California, in addition to doing business in twelve other states across the country. (*Id.* ¶¶ 19-20.)

Plaintiffs, current and former tenants of IH who rented homes in California, Arizona, Colorado, Florida, Georgia, Illinois, Nevada, North Carolina, Tennessee, Texas, and Washington, bring this action to challenge Defendant's fees imposed in connection with late rent payments. (*Id.* ¶¶ 5-6.) Plaintiffs allege that Defendant has a uniform practice of charging tenants a late rent penalty fee of $95. (*Id.* ¶ 3.) Plaintiffs allege that Defendant's late fees are an illegal penalty under the laws of the states in which Defendant operates. (*Id.* ¶ 5.)

Mr. Rivera rented a home from IH in Sylmar, California until February 2018. (*Id.* ¶ 22.) Mr. Rivera alleges that the lease he signed contained a late rent penalty provision, under which a tenant would be charged $95 for late payment of rent. (*Id.*) Mr. Rivera alleges that he was charged this late fee when he failed to pay his rent on time. (*Id.*) Mr. Rivera alleges that IH threatened to evict him for failure to pay his late fees, and so he paid the fees. (*Id.* ¶¶ 25-26.) Plaintiffs Francine McCumber (Arizona), Erin Bird (Colorado), James Couch (Florida), La Shay Harvey (Georgia), Maryah Marciniak (Illinois), Brian Majka (North Carolina), Chad Whetman (Nevada), Tracy White (Tennessee), Rachel Osborn (Texas), and Teresa Marie Moore (Washington) were similarly charged and paid late fees while renting from IH in their respective states. (*See id.* ¶¶ 28-37.)

Plaintiffs seek to assert their claims on behalf of eleven sub-classes: (i) a "California Class" consisting of IH California tenants who were charged late fees; (ii) an "Arizona Class" consisting of IH Arizona tenants who were charged late fees; (iii) a "Colorado Class" consisting of IH Colorado tenants who were charged late fees; (iv) a "Florida Class" consisting of IH Florida tenants who were charged late fees; (v) a "Georgia Class" consisting of IH Georgia tenants who

1 were charged late fees; (vi) an "Illinois Class" consisting of IH Illinois tenants who were charged late fees; (vii) a "Nevada Class" consisting of IH Nevada tenants who were charged late fees; (viii) a "North Carolina Class" consisting of IH North Carolina tenants who were charged late fees; (ix) a "Tennessee Class" consisting of IH Tennessee tenants who were charged late fees; (x) a "Texas Class" consisting of IH Texas tenants who were charged late fees; and (xi) a "Washington Class" consisting of IH Washington tenants who were charged late fees. (*Id.* ¶ 49.)

Plaintiffs bring twenty-nine causes of action including for: violations of California Civil Code section 1671(d); violations of California's Unfair Competition Law; violations of the consumer protection laws of Arizona, Florida, Georgia, Illinois, North Carolina, Texas, and Washington; unjust enrichment under the laws of eleven states; and declaratory judgment of invalidity of the late rent penalties under the laws of Arizona, Georgia, Illinois, North Carolina, Nevada, Tennessee, Texas, and Washington. (*See id.* ¶¶ 58-250.)

## ANALYSIS

**A.  Applicable Legal Standards.**

**1.  Rule 12(b)(2).**

Federal Rule of Civil Procedure 12(b)(2) governs dismissal for lack of personal jurisdiction. It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Courts may consider evidence presented in affidavits to assist in its determination and may order discovery on jurisdictional issues. *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). However, when "a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss . . . That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted); *see also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (where the trial court ruled on jurisdictional issue based on affidavits and without holding an evidentiary hearing, plaintiff need only make a prima facie showing). Where the facts are not directly controverted, plaintiff's version of the facts is taken as true. *See AT&T*, 94 F.3d at

588. Likewise, conflicts between the facts contained in the parties' affidavits must be resolved in a plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Schwarzenegger v. Fred Martin Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

"Personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996)). Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same. *Schwarzenegger*, 374 F.3d at 801.

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. *See International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945) (further holding that the maintenance of an action in the forum must not offend traditional conceptions of fair play and substantial justice). The defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### 2. Rule 12(b)(6).

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court construes the complaint in the light most favorable to the non-moving party and accepts all material allegations in the complaint as true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). A court's inquiry is confined to the allegations in the complaint. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

**B.     The Court Grants the Motion to Dismiss for Lack of Personal Jurisdiction.**

Defendant moves to dismiss the claims of the out-of-state plaintiffs for lack of personal jurisdiction. Defendant argues that IH is not subject to general jurisdiction or specific jurisdiction in California with regard to the state law claims of the out-of-state named plaintiffs.

**1.     General Jurisdiction.**

In *Daimler AG v. Bauman*, the Supreme Court held that a corporation is typically subject to general personal jurisdiction only in a forum where it is incorporated or where it maintains its principal place of business. 571 U.S. 117 (2014). Where the defendant is a foreign corporation, the plaintiffs must establish that the defendant has "affiliations so continuous and systematic as to render [it] essentially at home in the forum State, ... i.e., comparable to a domestic enterprise in that State." *Id.* at 133 n.11 (citation omitted); *see Schwarzenegger*, 374 F.3d at 801 ("General jurisdiction over a nonresident defendant exists when the defendant engages in "continuous and systematic general business contacts" that "approximate physical presence in the forum state.") (internal citations and quotation marks omitted). Outside of the paradigm fora for the exercise of general jurisdiction over a corporation, i.e., the place of incorporation and the principal place of business, general jurisdiction will be available only in an "exceptional case." *Id.* at 137-38 & n.19.

Here, IH is a Maryland corporation with its principal place of business in Texas. (*See* Declaration of Cynthia Pinter ("Pinter Decl.") ¶¶ 3-4.) Accordingly, Defendant argues that this Court lacks general jurisdiction over it. Plaintiffs concede that IH is incorporated in Maryland; however, Plaintiffs argue that IH is subject to general jurisdiction in California because (1) the 2017 merger that led to the creation of IH involved predecessor entities that were subject to general jurisdiction in California; and (2) IH has substantial, continuous, and systematic contacts in California, including through its alter ego subsidiaries.

First, Plaintiffs argue that general jurisdiction over IH in California is proper because two entities involved in the chain of mergers that led to the creation of the present day IH would have been subject to general jurisdiction here. Specifically, Plaintiffs argue that Starwood Waypoint Residential Trust ("SW Trust") and Colony America Homes, Inc. ("Colony") had principal places

5

of business in California at one time. In 2015, SW Trust and Colony merged and became Starwood Waypoint Homes ("Starwood").[2] Starwood then moved its principal place of business to Arizona (*see* Declaration of Ethan Litney ("Litney Decl.")¶ 3, Ex. C, p. 12), and eventually Starwood merged with Invitation Homes on November 16, 2017 to become Defendant IH, a Maryland corporation with its principal place of business in Texas. (Pinter Decl. ¶¶ 3-4; *see also* SAC ¶ 19.)

Plaintiffs ask the Court to exercise general jurisdiction over IH based on the principal place of business of SW Trust and Colony under a theory of successor liability. Plaintiffs, however, cite no authority establishing that the Court must assess each link in the corporate chain leading to an eventual merger in determining whether it has general jurisdiction over a defendant. Indeed, such a proposition is inconsistent with *Daimler*'s rejection of a "sprawling view of general jurisdiction." 571 U.S. at 136 (rejecting agency theory of general jurisdiction that would have subjected foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate). Second, Plaintiffs' argument regarding successor liability is misplaced. As noted in *Daimler*, while "[a]gency relationships…may be relevant to the existence of *specific* jurisdiction," they are of questionable relevance in the context of general jurisdiction. *Id.* at 135 n.13. Plaintiffs do not point to any post-*Daimler* authority suggesting otherwise. Indeed, even Plaintiffs' cited authorities discuss the issue of personal jurisdiction under a theory of successor liability in the context of specific—not general—jurisdiction. *See, e.g.*, *Hammond v. Monarch Inv'rs, LLC*, No. 09-CV-2055W (WVG), 2010 WL 2674401, at *3 (S.D. Cal. July 2, 2010) (discussing whether theory of successor liability can support a finding of specific jurisdiction).[3]

Regardless, Plaintiffs' successor liability theory fails. Personal jurisdiction based on

---

[2] Starwood Waypoint Homes was originally named Colony Starwood Homes, but the entity changed its name to Starwood Waypoint Homes in July 2017. (Litney Decl. ¶ 4, Ex. E.)

[3] The exception is *Parallel Media, LLC v. D&M Capital Grp., LLC*, but that case is distinguishable. No. CV 10-05666 MMM (FFMx), 2011 WL 13217278 (C.D. Cal. May 31, 2011). *Parallel Media* applied a less stringent, pre-*Daimler* standard in assessing jurisdiction. 2011 WL 13217278 at *10. In addition, as Defendant notes, the decision in *Parallel* misquoted *CenterPoint Energy, Inc. v. Sup. Ct.*, 157 Cal. App. 4th 1101 (2007) for the proposition that general jurisdiction may attach under a theory of successor liability. *Center Point* in fact states that *personal* jurisdiction might attach.

successor liability only exists "if (1) the court would have had personal jurisdiction over the predecessor; and (2) the successor company effectively assumed the subject liabilities of the predecessor." *Lefkowtiz v. Scytl USA*, No. 15-CV-05005-JSC, 2016 WL 537952, at *3 (N.D. Cal. Feb. 11, 2016) (internal quotations and citation omitted). As to the first factor, Defendant does not dispute that the Court would have had personal jurisdiction over SW Trust and Colony, the purported predecessors, because both had principal places of business in California. Plaintiffs, however, fail to satisfy the second factor. For one, the SAC does not allege successor liability and makes only a passing reference to the existence of these entities. Furthermore, "[t]he contacts of the predecessor can be attributed to a successor in interest if that successor would be liable for *the actions of the predecessor* under the law of the forum. *Galen Inv. Advisors, Inc. v. Alcatel,* No. C 02-2774 MJJ, 2002 WL 31319900, at *5 (N.D. Cal. Oct. 10, 2002) (emphasis added). Here, Plaintiffs challenge late rent penalties occurring no earlier than 2017, long after the merger of SW Trust and Colony. Accordingly, Plaintiffs have not plausibly alleged any liability on the part of SW Trust or Colony, the predecessor entities, because Plaintiffs' claims center on payments made in 2017 or later. By that time, the record suggests that CW Trust and Colony no longer existed and were fully merged into Starwood, which had its principal place of business in Arizona. (*See* SAC ¶ 19.) Defendant cannot be subject to personal jurisdiction under a successor theory because Plaintiffs cannot allege any unlawful conduct by SW Trust and Colony for which it would inherit liability. *See Dickert v. Sanyo Energy (U.S.A.) Corp.*, No. 18-CV-04664-EMC, 2019 WL 3302810, at *6 (N.D. Cal. July 23, 2019).

Plaintiffs also argue that the Court may exercise general jurisdiction over IH based on its systematic contacts in California and the contacts of its subsidiaries. With regard to systematic contacts, Plaintiffs argue that Defendant should be subject to general jurisdiction in California because its operations in California exceed its operations in other states. Plaintiffs assert that IH has acquired more real estate in California than in any other state in which it operates, earns more revenue from California than any other state, has more offices in California than any other state, and employs and houses hundreds of people in the forum.

These contacts are insufficient to establish general jurisdiction. "The Supreme Court has

held business contacts that are 'in some sense continuous and systematic' cannot establish general jurisdiction unless they are 'so continuous and systematic as to render [the corporation] essentially at home in the forum State.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (quoting *Daimler,* 571 U.S. at 139). This inquiry "examines a corporation's activities worldwide—not just the extent of its contacts in the forum state—to determine where it can be rightly considered at home." *Id.* at 1070. Accordingly, courts routinely find that general jurisdiction does not lie where a corporation conducts some business activity in the forum state, but not a sufficient amount to render the corporation at home there. *Id.* at 1069 (finding the defendant's contacts with the forum state insufficient to establish general jurisdiction because although it sent employees on an average of 47 trips per month to the forum state and employed between twenty and thirty employees in the state, those contacts were minimal compared to worldwide contacts); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (no general jurisdiction based on contacts even where the defendant, a French entity, had contracts between $225 and $450 million in California, sent representatives to California regularly, and contract with California component suppliers); *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 1244918, at *4 (N.D. Cal. Mar. 16, 2020) (concluding that "some business activity occurred in the forum state, but not a sufficient amount to render the corporation at home there"); *Adam v. Barone*, No. 20-CV-00761-EMC, 2020 WL 4584182, at *4 (N.D. Cal. Aug. 10, 2020) (finding that the defendant's "repeated business interactions" in the forum state failed to "meet the high standard of the 'exceptional case' to establish general jurisdiction") (internal citation omitted).

Here, Plaintiffs have established that some of IH's business activity occurs in California but not enough to render IH at home here. Although Plaintiffs argue that IH does substantially more business in California than in other states, they do not draw a direct comparison against IH's contacts in the other states in which it operates. And the filings that Plaintiffs submit undermine their argument and suggest that they may be overstating the extent to which IH's business operations in California exceed that which it conducts in other states. (*See, e.g.*, Litney Decl. Ex. A at 51 (representing that as of December 31, 2018, IH's properties in California accounted for 19.7% of IH's revenue whereas IH's Florida properties accounted for 31.8% of revenue); *see also*

8

*id.* at F-46 (listing 12,722 as the total number of IH's California properties and 24,899 as the total number of IH's Florida properties). Accordingly, the evidence suggests that California may be an important market for IH, but it does not establish that IH is at home in California. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022 (9th Cir. 2017) (no general jurisdiction based on activities in California where the evidence submitted established that sales in North America accounted for just 17% of the defendant's total net sales); *see also Daimler*, 571 U.S. at 138–39, n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.") (citation omitted)).

Plaintiffs also argue that IH is subject to general jurisdiction based on its subsidiaries' contacts under an alter ego theory. According to Plaintiffs, "[t]he INVH LP entity is a mere instrumentality of Defendant, and the entire [company] that is Defendant is consolidated and operated directly by a single subsidiary." Opp. at 15. Plaintiffs also argue that IH has registered over forty of its subsidiaries in California with designated agents for service of process and that one of its subsidiaries is a California corporation. (*See* Litney Decl., ¶ 13, Ex. N; *see also id.* ¶ 11, Ex. L.)

To satisfy the alter ego test and extend personal jurisdiction to a foreign parent or subsidiary on the basis of the in-forum entity's contacts, a plaintiff "must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Ranza*, 793 F.3d at 1073 (9th Cir. 2015) (internal citations and quotations omitted). The "unity of interest and ownership" prong requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.* (internal quotation marks omitted). The test contemplates pervasive control over the subsidiary, such as when a parent corporation "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* Complete ownership and common management personnel are alone insufficient to establish the requisite level of control. *Id.*

Plaintiffs have failed to plead facts sufficient to make out a case that IH and any of its subsidiaries are alter egos. Indeed, the SAC is void of factual allegations regarding any parent-subsidiary relationship. Plaintiffs' opposition and the evidence offered in support offer no additional clarity. First, Plaintiffs do not assert, and the documents do not establish, that INVH LP is at home in California. Plaintiffs also argue that IH's SEC filings indicate that INVH LP is "mere instrumentality" of IH because the activities were directed by the same board of directors. But this argument alone does not support jurisdiction based on an alter ego theory. Even assuming Plaintiffs had alleged facts or offered evidence supporting a unity of interest between these two entities, it would not establish general jurisdiction over IH. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021-1022 (9th Cir. 2017) ("[E]ven assuming that YMUS's contacts could be imputed to YMC, this does not, on its own, suffice to establish general jurisdiction. In *Daimler*, the Court assumed that the subsidiary's in-state contacts could be imputed to the foreign parent, but nevertheless found the exercise of general jurisdiction inappropriate.")

Plaintiffs also reference some forty California subsidiaries of IH, but they do not explain which of those is IH's alter ego. Nor do Plaintiffs meaningfully address the nine factors guiding the alter ego analysis. With regard to the four factors Plaintiffs do address—commingling of funds, use of the same offices and employees, and centralization of control—the evidence they provide is too vague and conclusory to support a finding of unity of interest. *Reynolds v. Binance Holdings Ltd.*, No. 20-cv-02117-JSC, 2020 WL 5074391, at *4 (N.D. Cal. Aug. 26, 2020) ("To sufficiently allege a theory of alter ego, however, a plaintiff must offer more than labels and conclusions—factual allegations must be enough to raise a right to relief above the speculative level.") (internal quotations and citations omitted). Plaintiffs do not address the other five factors, and accordingly, the Court finds these factors weigh against finding of alter ego liability. *Id.* at *7 ("A plaintiff's failure to discuss a unity of interest factor weighs against the finding of alter ego liability."). Plaintiffs have failed to meet their prima facie burden regarding any unity of interest between IH and any of its subsidiaries. Accordingly, IH is not subject to general personal jurisdiction under an alter ego theory.

The Court concludes that Plaintiffs have failed to establish that IH is subject to general

jurisdiction in California.

### 2. Specific Jurisdiction.

Defendant argues that the Court lacks specific jurisdiction over the claims asserted by the out-of-state plaintiffs for violations of other states' laws, relying on *Bristol-Myers Squibb Co. v. Superior Court of California.* __ U.S.__, 137 S.Ct. 1773 (2017). In that case, a group of over 600 individuals, only some of whom were California residents, filed suit in California state court asserting claims under California law based on harm they allegedly suffered based on the defendant's sale of the drug Plavix. *Id.* at 1778. The Supreme Court held that the trial court could not exercise specific jurisdiction over claims asserted by non-resident named plaintiffs. The Court reasoned that to exercise specific jurisdiction over a non-resident defendant, "settled principles" required an "affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State." *Id.* at 1781 (quoting *Goodyear Dunlop Tires Ops. S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The non-resident plaintiffs in *Bristol-Myers*: had not been prescribed Plavix in California; had not purchased it in California; had not ingested it in California; and had not been injured in California. "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California – and allegedly sustained the same injuries as did the non-residents – does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* Thus, because all the relevant harm to the non-resident plaintiffs occurred outside of California, "the California courts cannot claim specific jurisdiction." *Id.* at 1782. The Court stated, however, that it left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784; *see also id.* at 1789 n.4 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there.").

The Ninth Circuit has not directly addressed whether and how the *Bristol-Myers* opinion applies to the claims of non-resident named plaintiffs seeking to represent a statewide class of non-forum residents proceeding under non-forum law. "[D]istrict courts are divided over how far

11

to apply its holding and reasoning." *In re Packaging Seafood Prods. Antitrurst Litig.*, 338 F. Supp. 3d 1118, 1171 (C.D. Cal. Sept. 5, 2018) (collecting cases).

Defendant relies on a line of cases in which district courts have granted motions to dismiss under *Bristol-Myers* where named non-resident class representatives assert exclusively state-law claims and where there is no putative nationwide class, as is the case here. *See Reitman v. Champion Petfoods USA, Inc.,* No. CV 18-1736-DOC (JPRx), 2018 WL 4945645, at *5 (C.D. Cal. Oct. 10, 2018) (declining to exercise personal jurisdiction over nonresident plaintiffs' claims where "[n]one of the named Plaintiffs from Minnesota, Florida, New York, Colorado, Illinois, Massachusetts, Iowa, Washington, Alaska, Michigan, or Wisconsin alleges any facts relating to this District; no nonresident Plaintiff states that she purchased Champion pet foods in California, saw Champion pet food labels in California, or suffered any injury in California."); *Gaines v. Gen. Motors, LLC*, No. 17-cv-1351-LAB (JLB), 2018 WL 3752336, at *3 (S.D. Cal. Aug. 7, 2018) (applying *Bristol-Myers* finding "no basis for the Court to exercise personal jurisdiction over the proposed out-of-state named plaintiffs' claims against GM arising entirely from out-of-state activities"); *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1036-37 (S.D. Cal. 2020) (holding that the court lacks personal jurisdiction over the defendant with respect to out of state claims where "California has little interest in the claims of non-California plaintiffs arising out of purchases made outside California from a Delaware company with a principal place of business in Arizona."); *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, No. 16-CV-06391-BLF, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018) (granting motion to dismiss for lack of personal jurisdiction based on *Bristol-Myers* as to claims of named plaintiffs seeking to represent a statewide class of non-forum residents proceeding under non-forum law).

Plaintiffs argue that *Bristol-Myers* does not preclude specific jurisdiction over the claims of the out-of-state plaintiffs because: (1) it does not apply to class actions; and (2) it does not apply in federal court. Plaintiffs cite to several district court cases that have found *Bristol-Myers* inapplicable to federal class actions. These cases, however, address the issue of whether *Bristol-Myers* applies to absent members of a putative nationwide class. *See, e.g.*, *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, No. 17-cv-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal., Sept.

12

22, 2017) (holding that *Bristol-Myers* did not authorize a defendant to challenge personal jurisdiction over claims by unnamed members of a nationwide plaintiff class); *Feller v. Transam. Life Ins. Co.*, No. 2:16-cv-01378-CAS-AJW, 2017 WL 6496803, at *17 (C.D. Cal. Dec. 11, 2017) (noting that the majority in *Bristol-Myers* "did not address the narrow issue of whether its opinion 'would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs'"); *Cabrera v. Bayer Healthcare, LLC*, No. LA CV 17-08525 JAK (JPRx), 2019 WL 1146828, at *8 (C.D. Cal. Mar. 6, 2019) ("*Bristol-Meyers* left open the issue whether the claims of unnamed putative class members must be considered as part of the analysis of personal jurisdiction."). That is not the situation before this Court. Here, named non-resident plaintiffs are asserting exclusively state-law claims, and there is no nationwide class. Accordingly, the Court is not persuaded by Plaintiffs' authorities, and Plaintiffs do not attempt to rebut those cases cited by Defendant.

Plaintiffs' argument regarding the applicability of *Bristol-Myers* in federal court also fails. The growing weight of authority supports the conclusion that "*Bristol-Myers* applies to federal courts sitting in diversity." *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019); *see also Fitzhenry-Russell*, 2017 WL 4224723, at *4 ("The Court finds no merit in the plaintiffs' first argument that *Bristol-Myers* does not apply to federal courts. This is because federal courts routinely apply the specific jurisdiction analysis to defendants in cases that are before them solely on the basis of diversity."); *Gaines*, 2018 WL 3752336, at *3 (S.D. Cal. Aug. 7, 2018) ("[T]he concerns that gave rise to that caveat—whether a foreign defendant's contacts with the United States as a whole could be aggregated to satisfy due process in a case concerning a federal claim—do not apply with any force here."). This case is solely before the Court on the basis of diversity jurisdiction. *See Sloan v. Gen. Motors LLC*, 2020 WL 664033, at *10 (N.D. Cal. Feb. 11, 2020) ("CAFA constitute[s] an expansion of diversity jurisdiction; it does not on its own, purport to establish federal question jurisdiction."). All of the claims presented are state law claims; there are no federal claims. Accordingly, the Court declines to find *Bristol-Myers* inapplicable on this basis.

Plaintiffs also request that the Court exercise pendant personal jurisdiction over the claims

13

of the out-of-state plaintiffs and non-resident class members.  Pendent personal jurisdiction is "typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004).  Whether to exercise pendent personal jurisdiction is afforded to the discretion of the district court.  *Id.* at 1181.  "The district court may have discretion to dismiss the pendent claims where considerations of judicial economy, convenience and fairness to litigants so dictate."  *Id.* (citation omitted).  Here, there is no federal claim upon which Plaintiffs can attach the state law claims arising under the laws of Arizona, Colorado, Florida, Georgia, Illinois, Nevada, North Carolina, Tennessee, Texas, and Washington.  Accordingly, the Court declines to exercise pendent personal jurisdiction over the claims of the non-resident named plaintiffs.  *See Reitman*, 2018 WL 4945645, at *6; *Andrade-Heymsfield v. Danone US, Inc.*, No. 19-CV-589-CAB-WVG, 2019 WL 3817948, at *5 (S.D. Cal. Aug. 14, 2019), *appeal dismissed*, No. 19-56082, 2020 WL 5513552 (9th Cir. Aug. 13, 2020) (dismissing state law claims for lack of personal jurisdiction without prejudice to re-filing in an appropriate jurisdiction).

### 3. Jurisdictional Discovery.

In a footnote, Plaintiffs seek leave to conduct jurisdictional discovery.  To warrant jurisdictional discovery, a plaintiff must offer some details in support of the assertion that discovery will establish facts showing that a defendant is subject to the court's jurisdiction.  *Reynolds*, 2020 WL 5074391, at *8 (N.D. Cal. Aug. 26, 2020) (internal quotations and citations omitted); *see Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (denial of jurisdictional discovery is appropriate when the request is "based on little more than a hunch that it might yield jurisdictionally relevant facts.").  Here, Plaintiffs fail to offer any details supporting the assertion that jurisdictional discovery would establish facts supporting jurisdiction over IH under any of Plaintiffs' theories.  Accordingly, Plaintiffs' request is "based on little more than a hunch that it might yield jurisdictionally relevant facts," and the Court DENIES the request for that reason.  *Boschetto*, 539 F.3d at 1020.

Because there is no basis for the Court to exercise personal jurisdiction over the out-of-

state named plaintiffs' claims against IH, and because Plaintiffs have not suggested that they could amend the complaint to allege additional jurisdictional facts absent jurisdictional discovery, the Court DISMISSES these claims without leave to amend.

### 4. The Court Denies the Request to Transfer.

Plaintiffs request that the Court exercise its discretion under 28 U.S.C. section 1631 ("Section 1631") to transfer Plaintiffs' non-California claims to the Northern District of Texas where IH is at home rather than dismiss those claims. Defendant argues that Plaintiffs' request should be denied because: (1) Section 1631 applies to subject matter jurisdiction, not personal jurisdiction; (2) Section 1631 permits transfer of an entire action, not a partial transfer; and (3) Plaintiffs have not shown that transfer is in the interest of justice.

Section 1631 states that a court "shall, if it is in the interest of justice," transfer an "action" upon determining that there is "a want of jurisdiction." 28 U.S.C. section 1631. Courts are divided over Section 1631's applicability to personal jurisdiction. In *Allen v. Conagra Foods, Inc.*, the court recognized that there is little Ninth Circuit authority addressing whether Section 1631 applies to a lack of personal jurisdiction, but it cited several published Ninth Circuit cases suggesting that the statute is limited to subject matter jurisdiction. No. 3:13-CV-01279-WHO, 2019 WL 5191009, at *3 (N.D. Cal. Oct. 15, 2019) (collecting cases). Relying on those authorities and the statute's clear legislative history as set forth in a leading treatise, the *Allen* court concluded that the statute applies only to subject matter jurisdiction and not personal jurisdiction. *Id.* (citing 15 Wright, Miller, Cooper, Steinman, Struve and Amar, Federal Practice & Procedure, section 3842 (4th ed. 2020)). This Court agrees with the reasoning in *Allen* and concludes that Section 1631 is intended to apply to situations in which a court lacks subject matter jurisdiction.

Moreover, the Court does not find that transfer is appropriate here because Plaintiffs have not established that it is in the interest of justice to transfer the action. Plaintiffs do not contend that the claims of the non-California plaintiffs would be barred by the statute of limitations or otherwise prejudiced by a failure to transfer. *Cf. Johnson v. Mitchell*, No. 2:10-CV-1968 GEB GGH, 2012 WL 2446098, at *7 (E.D. Cal. June 26, 2012) (permitting transfer under Section 1631

15

where plaintiff was proceeding pro se and the statute of limitations would bar refiling the claims against defendant if transfer was denied). For these reasons, the Court DENIES Plaintiffs' request to transfer the non-California claims under Section 1631.

**C. The Court Grants the Motion to Dismiss for Failure to State a Claim.**

**1. UCL "Unfair" Claim.**

Plaintiffs assert a claim for violations of the unlawful and unfair prongs of the UCL. IH challenges only the sufficiency of the allegations regarding the "unfair" prong. In its prior order granting IH's motion to dismiss, the Court explained the various pleading requirements to allege a claim under the unfair prong of the UCL: courts applying the balancing test require a plaintiff to allege facts that show that the harm to consumers outweighs the utility of a particular business practice, while other courts look for allegations "show[ing] a practice violates public policy as declared by specific constitutional, statutory, or regulatory provisions." *Burdt v. Whirlpool Corp.*, No. 15-cv-1563-JSW, 2015 WL 4647929, at *7 (N.D. Cal. Aug. 5, 2015). The Court then dismissed the UCL "unfair" claim on the basis that the allegations in the First Amended Complaint ("FAC") were too vague and conclusory to permit the Court to apply either of the "unfair" tests.

The "unfair" UCL-related allegations in the SAC, however, are almost identical to the those in the FAC that the Court found to be insufficient. (*Compare* FAC ¶ 21, 43 *with* SAC ¶¶ 65-67.) The only new allegation that Plaintiffs point to in support of their argument is a 2018 SEC filing by IH, but the allegations related to this document are too conclusory to support their claim. The Court finds that Plaintiffs have again failed to allege sufficient facts to state a plausible claim. Accordingly, the Court GRANTS Defendant's motion to dismiss the "unfair" UCL claim with prejudice. *See Sosa v. Bank of New York Mellon Tr.*, No. C 12-00144 LB, 2012 WL 2568188, at *3 (N.D. Cal. July 2, 2012) (dismissing "unfair" claim with prejudice where plaintiff had been afforded leave to amend but failed to correct the deficiencies identified by the court).

**2. Unjust Enrichment under California Law.**

Defendant also moves to dismiss Mr. Rivera's claim for unjust enrichment under California law. "[I]n California, there is not a standalone cause of action for unjust enrichment,

16

but a court may construe the cause of action as a quasi-contract claim seeking restitution. *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation marks and citations omitted). "As a matter of law, a quasi-contract action for unjust enrichment does not lie where…express binding agreements exist and define the parties' rights." *Cal. Med. Ass'n.*, v. *Aetna U.S. Healthcare of Cal. Inc.*, 94 Cal. App. 4th 151, 172 (2001) (dismissing claim for unjust enrichment where third-party contracts defined the rights of the parties).

Here, the facts alleged reference a contract—the lease agreement—between Plaintiffs and Defendant. Plaintiffs allege that the challenged late rent penalty policy is "set forth in Defendant's standard nationwide lease." (SAC ¶ 42; *see also id.* ¶ 43.) Plaintiffs allege that Mr. Rivera signed and was subject to this uniform lease that contained a late rent penalty provision of $95 and that he paid late penalties pursuant to a provision in the lease. (*Id.* ¶ 22.) Although Plaintiffs allege in conclusory fashion that the lease was a "contract of adhesion" (*see id.* ¶ 78), they have failed to plead facts establishing that the lease agreement may be unenforceable or invalid, and so Mr. Rivera's claim for unjust enrichment fails. *See Dolce Int'l/San Jose, LLC v. City of San Jose, California*, No. 5:20-CV-03774-EJD, 2020 WL 5910066, at *3 (N.D. Cal. Oct. 6, 2020). Accordingly, the Court DISMISSES this claim with leave to amend.

### D. The Court Denies the Motion for Leave to File Amicus Curiae Brief.

On October 13, 2020, Edward C. Tidwell filed a motion for leave to file a brief of amicus curiae in support of Plaintiffs' opposition to Defendant Invitation Homes, Inc.'s motion to dismiss the second amended complaint. Defendant opposed Tidwell's motion on October 27, 2020. A court may allow the submission of an amicus brief "when a party is not represented competently or is not represented at all, … or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Merritt v. McKenney*, No. C 13-01391 JSW, 2013 WL 4552672, at *4 (N.D. Cal. Aug. 27, 2013) (internal citations omitted). Here, Plaintiffs are represented by counsel, and the Court is not convinced that the amicus brief provides the Court with unique information or a unique perspective on the issues raised in this case. Accordingly, the Court DENIES the motion to file an amicus brief.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss. The motion to dismiss is granted without leave to amend, except for the claim for unjust enrichment. Plaintiff may file any amended complaint within 21 days of this Order.

The parties are ordered to appear for a further case management conference on January 22, 2021 at 11:00 a.m. The parties shall submit a joint case management conference statement by no later than January 15, 2021.

The Court DENIES the motion for leave to file a brief of amicus curiae in support of Plaintiffs' opposition submitted by Edward C. Tidwell.

**IT IS SO ORDERED.**

Dated: October 29, 2020

_____
JEFFREY S. WHITE
United States District Judge